[No. F042217. Fifth Dist. Aug. 13, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RICK DALE CABRAL, Defendant and Appellant.

**COUNSEL**

Jackie Menaster, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Louis M. Vasquez and Michelle L. West, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey Christensen gave his employee Rick Dale Cabral a blank check to weigh a trailer, but Cabral made the check payable to cash, wrote in $1,000 as the amount, and cashed the check at a bank. He told the police both that he had Christensen's permission to cash the check and that he did not have permission but cashed the check anyway because Christensen owed him the money. A jury found him guilty of forgery. (Pen. Code, § 470, subd. (d).)

On appeal, Cabral argues, inter alia, that instruction on late defense discovery prejudiced him. The Attorney General argues the contrary. We will agree with Cabral and will reverse the judgment on that ground. Accordingly, we will not address his other issues.

### DISCUSSION

Preliminarily, the Attorney General argues Cabral forfeited his right to appellate review by failing to object to the instruction he now challenges on appeal. Applying the established rule that allows appellate review, even in the absence of an objection, of any instruction affecting the substantial rights of the accused, we reject that argument. (Pen. Code, § 1259; *People v. Brown* (2003) 31 Cal.4th 518, 539, fn. 7 [3 Cal.Rptr.3d 145, 73 P.3d 1137].)

At the prosecution's request, the court instructed on late defense discovery to the prosecution. The sole topic of the instruction was Cabral's wife's testimony:

"The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise which may arise during the course of the trial. Delay in the disclosure of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the non-complying party's evidence.

"Disclosures of evidence are required to be made at least 30 days in advance of trial. Any new evidence discovered within 30 days of trial must be disclosed immediately. In this case, the Defendant failed to timely disclose the following evidence: the testimony of Antoinette Cabral.

"Although the Defendant's failure to timely disclose evidence was without lawful justification, the Court has, under the law, permitted the production of this evidence during the trial.

"The weight and significance of any delayed disclosure are matters for your consideration. However, you should consider whether the untimely disclosed evidence pertains to a fact of importance, something trivial or subject matters already established by other credible evidence." (CALJIC No. 2.28.)

In pre-opinion briefing, Cabral notes, "There appears to be no law on the propriety of CALJIC [No.] 2.28." Indeed, that was the state of the law before *People v. Bell* (2004) 118 Cal.App.4th 249 [12 Cal.Rptr.3d 808] (*Bell*), which, as Cabral's petition for rehearing points out, the First Appellate District, Division Three filed "almost simultaneously" with our original opinion. Since *Bell* reversed solely on the ground of prejudice from CALJIC No. 2.28, we granted Cabral's petition for rehearing and ordered letter briefing on the implications of *Bell*'s rationale on our original opinion.

The similarities between the two cases are striking. Here, as in *Bell*, the record failed to show the accused was personally responsible for any delay. (*Bell, supra,* 118 Cal.App.4th at p. 255.) So "the instruction was, at least partially, inaccurate" for having informed the jurors " '*the Defendant*' failed to make a timely disclosure." (*Id.* at pp. 254–255, italics added.) Instead, the instruction imputes to the accused any delay his or her counsel or investigator might have caused. CALJIC No. 2.05, on the other hand, expressly prohibits the jury from considering on the issue of the accused's consciousness of guilt anyone else's effort to procure false or fabricated evidence unless the jury finds the accused authorized that effort:

"If you find that an effort to procure false or fabricated evidence was made by another person for the defendant's benefit, you may not consider that effort as tending to show the defendant's consciousness of guilt unless you also find that the defendant authorized that effort. . . ." (CALJIC No. 2.05.)

The jurors here, as in *Bell*, "were told '[t]he weight and significance of any delayed disclosure are matters for your consideration,' " but "the instruction provides no guidance on how this failure might legitimately affect their deliberations." (*Bell, supra,* 118 Cal.App.4th at p. 255.) The instruction warned the jurors, "tardy disclosure might deprive an opponent of the chance to subpoena witnesses or marshal evidence in rebuttal" even though "there was no evidence that such an eventuality transpired." (*Ibid.*)

Another instruction, CALJIC No. 1.03, told the jurors here, as in *Bell*, "that they were not to 'consider or discuss facts as to which there is no evidence.' "

(*Bell, supra,* 118 Cal.App.4th at p. 255, quoting CALJIC No. 1.03.) Yet, in conflict with that instruction, CALJIC No. 2.28 "simply left [the jurors] to speculate, in the absence of any information, that the People were put at an actual disadvantage because of the late discovery." (*Bell,* at p. 255.) Even though "the jurors were not free to somehow fashion a punishment to be imposed on [the accused] because his lawyer did not play by the rules," CALJIC No. 2.28 nonetheless "implied that the jurors should 'do something' but they were given no idea what that something should be." (*Bell,* at p. 255.) "They could disbelieve, discount, or look askance at the defense witnesses. But it is not clear why, or to what extent, they should do so in the absence of evidence that the prosecution was unfairly prevented from showing that the witnesses were unreliable." (*Ibid.*)

 Significantly, *Bell* emphasizes that instructions otherwise analogous to CALJIC No. 2.28 caution the jury " 'that certain types of deceptive or evasive behavior' " by the accused are not sufficient to prove guilt, but that CALJIC No. 2.28 conspicuously fails to do so. (*Bell, supra,* 118 Cal.App.4th at p. 256, quoting *People v. Jackson* (1996) 13 Cal.4th 1164, 1224 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; see, e.g., CALJIC Nos. 2.03 ["a willfully false or deliberately misleading statement . . . is not sufficient by itself to prove guilt"], 2.04 ["persuad[ing] a witness to testify falsely or . . . fabricat[ing] evidence . . . is not sufficient by itself to prove guilt"], 2.05 ["procur[ing] false or fabricated evidence . . . is not sufficient by itself to prove guilt"], 2.06 ["suppress[ing] evidence against [the accused] in any manner, such as [by the intimidation of a witness] [or] [by an offer to compensate a witness] [or] [by destroying evidence] [or] [by concealing evidence] . . . is not sufficient by itself to prove guilt"], 2.52 ["[flight] [or] [attempted flight] [or] [escape] [or] [attempted escape] . . . after the commission of . . . or . . . [the] accus[ation] of a crime . . . is not sufficient in itself to establish . . . guilt"].) CALJIC No. 2.28 conspicuously fails to provide like clarification for the jury, so "the jurors may have concluded they were free to find [the accused] guilty merely because he failed to comply with the discovery statute." (*Bell,* at p. 256.)

*Bell*'s analysis of the disservice CALJIC No. 2.28 does to the rationale of the discovery statute is persuasive. "It is axiomatic that a trial is a search for the truth. [Citation.]" (*Bell, supra,* 118 Cal.App.4th at p. 256.) The rationale of the discovery statute is to prevent "trial by ambush." (*Ibid.,* citing *In re Littlefield* (1993) 5 Cal.4th 122, 131 [19 Cal.Rptr.2d 248, 851 P.2d 42].) "[T]he court has a variety of remedies available to penalize those who fail to comply with its rulings and the requirements of the statute. [Citation.]" (*Bell,* at pp. 256–257.) "Inviting the jury to speculate, or to punish a defendant for the malfeasance of someone else, however, are not among the weapons in its arsenal." (*Bell,* at p. 257.)

Here, a police officer testified Cabral told him Christensen gave him the check to weigh a trailer but instead of doing that he cashed the check as partial payment of money Christensen owed him. Cabral's wife testified Christensen told her he wanted to teach her husband a lesson, that he offered her twice the amount of the check to say her husband had no authority to cash the check, and that he threatened to implicate her if she did not cooperate with him. On the critical issue of whether Cabral had a right to cash the check, his wife's testimony corroborated the police officer's. Yet CALJIC No. 2.28 "invite[d] the jurors to speculate," told them "to evaluate the weight and significance of a discovery violation without any guidance on how to do so," and "falsely informed them that [Cabral] was responsible for the violation" without "warn[ing] them that the violation, standing alone, was insufficient to support a guilty verdict." (*Bell, supra,* 118 Cal.App.4th at p. 257.)

■ Since the jury could have rejected Cabral's wife's corroboration of the officer's testimony as a sanction for the discovery violation CALJIC No. 2.28 imputed to Cabral, he "may well have been substantially injured by the error of which he complains." (*People v. Watts* (1926) 198 Cal. 776, 793 [247 P. 884], disapproved on another ground in *People v. Thomas* (1945) 25 Cal.2d 880, 898–901 [156 P.2d 7].) On the record here, it is reasonably probable that he might have achieved a more favorable result had the court not instructed with CALJIC No. 2.28. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## DISPOSITION

We reverse the judgment and order a new trial. (Pen. Code, § 1262.)

Harris, Acting P. J., and Cornell, J., concurred.