[No. H026796. Sixth Dist. Sept. 15, 2004.]

SAN JOSE MERCURY NEWS, INC., Plaintiff and Appellant, v.
CRIMINAL GRAND JURY OF SANTA CLARA COUNTY et al.,
Defendants and Respondents.

COUNSEL

Gray Cary Ware & Freidenrich, Edward P. Davis, Jr., James M. Chadwick, Diana Ng for Plaintiff and Appellant.

Ann Miller Ravel, County Counsel, Martin H. Dodd, Special Assistant County Counsel, Debra L. Cauble, Assistant County Counsel, Melissa R. Kiniyalocts, Deputy County Counsel for Defendants and Respondents.

David R. LaBahn and George M. Palmer for California District Attorneys Association as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**PREMO, J.—**

## I. INTRODUCTION

After a witness has testified before the Criminal Grand Jury in Santa Clara County (Grand Jury), the foreperson gives the witness the following admonition: "You are admonished not to reveal to any person, except as directed by the court, what questions were asked and what responses were given or any other matters concerning the nature or subject of the grand jury's investigation which you learned during your appearance before the grand jury unless and until such time as the transcript of this grand jury proceeding is made public. Violation of this admonition is punishable as contempt of court."

Plaintiff, San Jose Mercury News (the Mercury) contends that this admonition is an unjustifiable prior restraint upon speech in violation of the First Amendment of the United States Constitution. We conclude that in the factual context of this case, the admonition is not a prior restraint.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2003, the Grand Jury began an investigation into allegations of misconduct by a superior court judge. While that investigation was in progress, one of the Mercury's reporters was outside the Grand Jury room interviewing a witness who was waiting to testify. Assistant District Attorney William Larsen approached the reporter and reminded her that if witnesses talked to her about their testimony, the witnesses could be "thrown in jail." According to the reporter, Larsen made his remark loudly enough to be overheard by the witness, and the witness "later declined to give specific details about his testimony." The reporter attempted to interview another prospective witness and the witness said that he would not speak with her unless the district attorney approved.

Based upon these facts, the Mercury filed a petition for writ of mandate arguing that the Grand Jury and the Santa Clara County District Attorney (District Attorney) (collectively, defendants) had a custom and practice of instructing potential witnesses not to speak with the media on penalty of contempt. According to the Mercury, the practice was a violation of its First Amendment rights as a newsgathering organization. The Mercury wanted the trial court to order defendants to cease the practice and to inform witnesses who had already been warned that they could speak with the media if they wanted to do so.

Defendants denied that they engaged in the alleged conduct but they acknowledged that in an attempt to maintain the secrecy of the proceedings,

the Grand Jury foreperson routinely gives witnesses the admonition quoted above. Defendants argued that the admonition does not offend the First Amendment because it does not prohibit witnesses from speaking with the media and it does not preclude them from disclosing information they acquired independently of the grand jury proceedings. The Mercury's reply attacked the constitutionality of the admonition.

By the time of the hearing on the petition on September 29, 2003, the Grand Jury's investigation had concluded and an indictment had issued. The focus of the parties' argument at the hearing, and the trial court's ultimate ruling, was upon the constitutionality of the admonition. The trial court did not rule upon the initial allegations of the petition, i.e., that defendants had a practice of warning witnesses not to speak with the media and of threatening them with contempt if they did so. But the trial court did not leave the subject without comment. The court noted: "So I know that the San Jose Mercury wants me to somehow admonish the district attorney and perhaps convey to witnesses that they are free to talk about what they know about something preexisting that hearing, I just simply want to emphasize, because I'm not sure exactly what occurred out there, in what context, and that it should be understood that a person is free to discuss what may be coincidentally the content of one's testimony in that hearing . . . ."

The trial court did rule that the Grand Jury's routine posttestimony admonition is constitutional because it limits its nondisclosure requirement to the questions that were asked, the answers that were given, and anything else the witness may have learned in the course of the secret proceedings. The trial court denied the writ.

### III. ISSUE

The Mercury's appeal is based exclusively upon its contention that the Grand Jury's posttestimony admonition is a prior restraint upon speech. During oral argument, however, the Mercury emphasized what it described as the District Attorney's view, allegedly communicated to the witnesses, that it is a crime for a witness to speak with the media. The Mercury contends that the District Attorney's viewpoint and the practice of warning witnesses in advance ought to color our analysis of the admonition. In our view, the question of whether the admonition is a prior restraint is an independent issue.

We cannot rule upon the District Attorney's counseling of witnesses prior to their testimony primarily because the Mercury did not brief the issue but raised it only at oral argument. More importantly, assuming the truth of the Mercury's allegation that the District Attorney has a practice of warning

witnesses not to speak with the media and of threatening them with contempt if they do so, everyone agrees that such conduct is inappropriate. Furthermore, in ruling on the writ petition, the trial court emphasized, "[A] prospective witness and a post-testifying witness under existing law are absolutely free to discuss what they knew preexisting to the hearing before the grand jury." Thus, to the extent the trial court may be deemed to have ruled upon the alleged conduct, it ruled in favor of the Mercury. It follows that the Mercury cannot appeal the ruling since the Mercury was not aggrieved by it. (*Ruben v. City of Los Angeles* (1959) 51 Cal.2d 857, 864 [337 P.2d 825].)[1]

The sole issue before us, therefore, is whether, in the factual context of this case, the Grand Jury's posttestimony admonition is subject to prior restraint analysis.

## IV. DISCUSSION

### A. *Scope and Standard of Review*

■   As in all First Amendment cases, our standard of review is de novo. We make an independent examination of the whole record to determine whether the trial court correctly denied the Mercury's petition for writ of mandate. (*L. A. Teachers Union v. L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 557 [78 Cal.Rptr. 723, 455 P.2d 827].)

### B. *The Admonition Is Not a Prior Restraint upon the Mercury*

The Mercury's appeal is premised solely upon its assertion that the secrecy admonition is "without question" a prior restraint upon speech and as such must be justified by a clear and present danger to the administration of justice, be narrowly tailored, and be based upon an express legislative or judicial determination of the need for it. (See *Levine v. U.S. Dist.*

---

[1] The question also arose at oral argument whether the Mercury has standing to challenge the admonition. Since the admonition is not directed to the Mercury, the Mercury's standing is dependent upon evidence that it is a potential recipient of speech, i.e., that there was a willing speaker who declined an interview because of the admonition. (See *VA. Pharmacy Bd. v. VA. Consumer Council* (1976) 425 U.S. 748, 756 [48 L.Ed.2d 346, 96 S.Ct. 1817]; and see *Application of Dow Jones & Co., Inc.* (2nd Cir. 1988) 842 F.2d 603, 608 (*Dow Jones*) [press has standing to challenge trial court restraint upon trial participants].) The parties suggest that the only witnesses who declined to speak with the Mercury did so as a result of the pretestimony conduct of the District Attorney and not as a result of the Grand Jury's admonition. But the record is not clear on the point. In light of the importance of the issue, we shall presume that the Mercury was a potential recipient of speech that was chilled by the admonition and, therefore, has standing to challenge it.

*Court for C. Dist. of Cal.* (9th Cir. 1985) 764 F.2d 590, 595.) The Mercury concedes that if the admonition is not a prior restraint, these concerns are inapplicable.

■ A prior restraint is an administrative or judicial order that forbids certain speech in advance of the time the communication is to occur. (*Alexander v. United States* (1993) 509 U.S. 544, 550 [125 L.Ed.2d 441, 113 S.Ct. 2766].) Prior restraints on pure speech are highly disfavored. If the admonition were properly characterized as a prior restraint, we would begin with the presumption that it is a violation of the First Amendment. (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241 [101 Cal.Rptr.2d 558]; and see *New York Times Co. v. United States* (1971) 403 U.S. 713, 718–726 [29 L.Ed.2d 822, 91 S.Ct. 2140].) But whether or not a restriction is subject to prior restraint analysis is determined by analyzing the operation and effect of the restraint in the particular circumstances of the case. (See *Kingsley Books, Inc. v. Brown* (1957) 354 U.S. 436, 441–442 [1 L.Ed.2d 1469, 77 S.Ct. 1325].) Most compelling in this case is the fact that the alleged restraint is not directed to the Mercury.

■ Defendants have not directly prevented the Mercury from publishing anything. The Mercury's complaint is that defendants' use of the admonition prevents the Mercury's access to information that a witness might have been willing to impart. Thus, the admonition cannot be deemed a restraint upon the Mercury's free speech rights, although, arguably, it implicates the First Amendment's guarantee of freedom of the press since the right to publish the news necessarily includes the right of access to news sources. (*Branzburg v. Hayes* (1972) 408 U.S. 665, 681 [33 L.Ed.2d 626, 92 S.Ct. 2646].) But it does not follow that a restraint upon a source of the news must survive the strict scrutiny of prior restraint analysis when the media, and not the source, is the challenger.

An analogous situation arises in cases involving restraints upon trial participants. In those cases, the status of the complainant determines whether prior restraint analysis applies. For example, *Levine v. U.S. Dist. Court for C. Dist. of Cal., supra,* 764 F.2d at page 595, held that a trial court gag order was subject to prior restraint analysis when the attorney to whom the order was directed challenged it as a violation of his free speech rights. In contrast, *Radio & Television News Ass'n v. United States Dist. Court* (9th Cir. 1986) 781 F.2d 1443, 1446, held that when the media challenged a similar gag order, prior restraint analysis did not apply.

The Second Circuit Court of Appeals explained the distinction this way: "The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press and

therefore public. A prior restraint deprives the public of specific news because it prevents publication. Although [a gag order] limits the flow of information readily available to the news agencies—and for that reason might have an effect similar to that of a prior restraint—the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press. For this reason [such an] order is considerably less intrusive of First Amendment rights than one directly aimed at the press." (*Dow Jones, supra,* 842 F.2d at p. 608.) The court concluded, "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by the former is properly characterized as a prior restraint, one opposed solely by the latter is not." (*Id.* at p. 609.)

Another consideration as important as the status of the complainant is the availability of the information to the public generally. In *Pell v. Procunier* (1974) 417 U.S. 817 [41 L.Ed.2d 495, 94 S.Ct. 2800], news organizations complained that a prison regulation denied them access to specifically designated prison inmates in violation of First Amendment freedom of the press guarantees. The Supreme Court rejected the claim: " 'It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. . . . Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations. Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded.' [Citation.] Similarly, newsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public." (*Id.* at pp. 833–834, quoting *Branzburg v. Hayes, supra,* 408 U.S. at pp. 684–685.) The Supreme Court concluded that the prison regulation, as applied to the media plaintiffs, did not abridge any First Amendment guarantees.

■ The admonition at issue instructs the witness (not the Mercury) to keep the proceedings secret by admonishing him or her not to reveal "what questions were asked and what responses were given or any other matters concerning the nature or subject of the grand jury's investigation which you learned during your appearance before the grand jury." This is no more a prior restraint than is a trial court gag order. Although the admonition may function somewhat like a prior restraint by impeding the flow of information, the information impeded is not the type that is generally available to the public. Indeed, it is undisputed that there is no First Amendment right of the public to access grand jury proceedings. Our Supreme Court has emphatically determined that "grand jury secrecy is the rule and openness the exception,

permitted only when specifically authorized by statute." (*McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1180 [245 Cal.Rptr. 774, 751 P.2d 1329]; and see *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1125–1126 [86 Cal.Rptr.2d 623, 979 P.2d 982].) In view of the generally secret nature of the proceedings the admonition is designed to protect and considering that it is not directed to the Mercury but to the witnesses who have not chosen to challenge it, we conclude that the Grand Jury's routine, posttestimony admonition of witnesses is not subject to the strict scrutiny of prior restraint analysis in this case.

We emphasize that we are not concerned with whether the District Attorney's conduct prevented a witness from speaking with the Mercury *before* testifying because, as we explained above, that issue is not before us. We merely hold that to the extent the admonition prevents the Mercury from obtaining information from a Grand Jury witness, the admonition is not a prior restraint. Since the Mercury makes no alternative argument, we need not reach defendants' contention that the admonition is constitutional under the balancing analysis used by the United States Supreme Court in *Butterworth v. Smith* (1990) 494 U.S. 624, 630 [108 L.Ed.2d 572, 110 S.Ct. 1376].

## V. Disposition

The order of the superior court denying the San Jose Mercury News's petition for a writ of mandate is affirmed.

Rushing, P. J., and Elia, J., concurred.