19 Cal.Rptr.3d 460 (2004)
122 Cal.App.4th 1362
The PEOPLE, Plaintiff and Respondent,
v.
Wallace W. VAUGHN, Defendant and Appellant.
No. B165489.
Court of Appeal, Second District, Division Four.
October 5, 2004.
Review Granted December 15, 2004.
*461 Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Joseph P. Lee and A. Scott Hayward, Deputy Attorneys General, for Plaintiff and Respondent.
CERTIFIED FOR PARTIAL PUBLICATION.[*]
CURRY, J.
Appellant Wallace W. Vaughn contends on appeal that the trial court erred in admitting into evidence his taped confessions to several crimes because the confessions were obtained after he invoked his right to remain silent. Appellant further argues that substantial evidence of intent to kill does not support the jury's findings on two of the attempted murder charges; that the trial court should have enunciated reasons on the record for imposition of consecutive sentences; and, in a supplemental brief, that the sentence in this matter was the result of improper factual findings by the court in violation of recent United States Supreme Court authority. We address appellant's claim of sentencing error in the published portion of this opinion. His other claims are treated in the unpublished portion. We conclude that his contentions have no merit, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. Information
Appellant was accused in a 13-count information of two counts of murder with special circumstances and eleven counts of attempted murder. Count one charged the murder of Jesus Bicuna on July 21, 2001. Counts two through four charged the "willful, deliberate, premeditated" attempted murder of Juan Espinoza, Francisco Espinoza, and Fidela Acevedo, respectively, on July 21, 2001.
*462 Count five charged the murder of Fernando Rubio on May 28, 2000. Counts six through eight charged the "willful, deliberate, premeditated" attempted murder of Henry Cifuentes, Fidel Rosales, and Copitzy Rodriguez, respectively, on May 28, 2000.
Counts nine through thirteen charged the "willful, deliberate, premeditated" attempted murder of Enrique Anaya, Criscencio Jaramillo, Rigoberto Bernal, Manuel Contreras, and Vicente Molina, respectively, on May 29, 2000. Appellant pled not guilty to all charges.

B.-C.[**]

D. Verdict and Sentencing
The jury found appellant guilty on counts one through eight and thirteen, and acquitted him on counts nine through twelve. With respect to the murder charges (counts one and five), appellant was found guilty of murder in the first degree. The jury further specifically found the special circumstances that appellant committed multiple murders of the first or second degree, and that the murder charged in count five was perpetrated by means of discharging a firearm from a vehicle. With respect to the attempted murder charges, the jury found true that the attempt was committed willfully, deliberately, and with premeditation with respect to counts two, six, seven, eight, and thirteen, and not true with respect to counts three and four. The jury further found that appellant personally used a firearm in committing the offenses.
During the sentencing hearing, the prosecution asked that all sentences be consecutive. Defense counsel asked that the sentencing for counts one, two, three, and four be concurrent because they all arose from the same incident, and asked that the sentencing for counts six, seven, and eight be concurrent for the same reason.[5]
The court sentenced appellant to life without possibility of parole plus 25 years to life for counts one and five; life with the possibility of parole plus 25 years to life for counts two, six, and seven; the upper term of nine years plus 25 years to life for count three; one-third the mid-term (two years, four months) plus 25 years to life for count four; life with the possibility of parole plus 20 years for count eight; and life with the possibility of parole plus one year for count thirteen. The court stated that count three could be the high term of nine years because "the circumstances in aggravation greatly outweigh[ ] those in mitigation for the violence and the number of victims and injuries shown here."

DISCUSSION

A.-D.[***]

E. Blakely/Apprendi

In a supplemental brief, appellant contends that the trial court committed sentencing error as outlined in Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 and Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. In Apprendi, defendant's sentence had been doubled because the trial court found the crime to have been motivated by racial animus. The court held that was improper because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and *463 proved beyond a reasonable doubt." (Apprendi v. New Jersey, supra, at p. 490, 120 S.Ct. 2348.)
The trial court in Blakely increased the defendant's sentence for kidnapping because it believed he had acted with "deliberate cruelty." (Blakely, supra, 124 S.Ct. at p. 2535.) Defendant, a resident of Washington, had been charged with first degree kidnapping, and pled to second degree. Under Washington law, second degree kidnapping was a class B felony, and state law provided that "`no person convicted of a [class B] felony shall be punished by confinement ... exceeding ... a term of ten years.'" (Ibid., quoting Wash. Rev.Code Ann. § 9A.20.021(1)(b).) The "standard range" for a sentence for second degree kidnapping with a firearm was 49 to 53 months. (Ibid., quoting Wash. Rev.Code Ann. § 9.94A.320.) However, a separate statutory provision permitted judges to impose a sentence above the standard range if they found "`substantial and compelling reasons justifying an exceptional sentence.'" (Ibid., quoting § 9.94A.120(2).) Under Washington decisional authority, reasons used to justify an exceptional sentence had to "`take[] into account factors other than those which are used in computing the standard range sentence for the offense.'" (Id., quoting State v. Gore (2001) 143 Wash.2d 288, 315-316 [21 P.3d 262].)
In Blakely, the court explained that the rule in Apprendi applied to the situation before it because: "[T]he `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citations.] In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' [citation] [so that] the judge exceeds his proper authority." (124 S.Ct. at p. 2537.) The danger, according to the court, was that such a judicial factfinding could relegate the jury to "making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish." (Id. at p. 2539.)
Ultimately, the Supreme Court concluded that the Blakely trial judge acted improperly because the facts supporting the finding of deliberate cruelty "were neither admitted by [the defendant] nor found by a jury." (124 S.Ct. at p. 2537.) The court compared the situation before it to that in Ring v. Arizona (2002) 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556, where it had "applied Apprendi to an Arizona law that authorized the death penalty if the judge found one of ten aggravating factors" and held that "the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding." (124 S.Ct. at p. 2537.) In the court's final analysis, "Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." (Id. at p. 2538.)
Appellant claims that two aspects of his sentence are invalidated by the Blakely/Apprendi rule: the upper term of nine years imposed for count three and the *464 decision that all sentences would run consecutively. Respondent contends, as a preliminary matter, that appellant waived this contention by failing to object to the sentencing at the time of trial. Addressing the procedural issue first, we start with United States v. Cotton (2002) 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860. In that case, the federal district court had imposed enhancements based on the defendants' possession of certain drug quantities, but the facts relied on were neither found by the jury nor included in the indictments. The court held that defendants' failure to raise Apprendi at the district court level resulted in forfeiture of their claim of Apprendi error. In a recent decision, the Third District cited Cotton for the proposition that failure to raise Apprendi in the trial court resulted in forfeiture of the right to argue Blakely on appeal. (People v. Sample (2004) 122 Cal.App.4th 206, 18 Cal.Rptr.3d 611.) But in People v. George (2004) 122 Cal.App.4th 419, 18 Cal.Rptr.3d 651, the Fourth District rejected a similar argument, citing People v. Scott, supra, 9 Cal.4th 331, 36 Cal.Rptr.2d 627, 885 P.2d 1040, in support of a more "pragmatic" approach. As we have seen, in Scott, the defendant was held to have waived his right to challenge his consecutive sentence for failure to announce a statement of reasons, because he did not raise it at the trial court level.
As explained in George, "[T]he Scott court reasoned that its waiver rule was necessary to facilitate the prompt detection and correction of error in the trial court, thus reducing the number of appellate claims and preserving judicial resources [citation], a pragmatic rationale that does not support the application of the waiver rule here. Prior to Blakely, California courts and numerous federal courts consistently held that there was no constitutional right to a jury trial in connection with a court's imposition of consecutive sentences. [Citations.] No published case in California held that a different rule applied in connection with the imposition of an upper term sentence. [Citation.] In light of this state of the law, [defendant's] assertion of a challenge to the imposition of an upper term sentence would not have achieved the purpose of prompt detection and correction of error in the trial court." (Id. 18 Cal.Rptr.3d at p. 654; accord, People v. Barnes (2004) 19 Cal. Rptr.3d 229 [holding that because "Blakely was sufficiently unforeseeable" there was "no forfeiture due to defendant's failure to object at sentencing"].)
We agree with the decisions in George and Barnes. The Supreme Court's decision in Blakely extended the Apprendi rationale into a new area, and created an opportunity for reviving the debate over Apprendi's ultimate meaning and impact. Indeed, after reviewing Blakely, the court in People v. George, supra, held that the trial court's reliance on certain factors as the basis for its decision to impose the upper term was inappropriate. Appellant cannot have forfeited or waived a legal argument that was not recognized at the time of his trial.
Turning to substantive matters, with respect to the contention that his right to a jury trial was violated with regard to imposition of the upper term on one count, appellant concedes that "the upper term was chosen [for count three] because of the violence and multiplicity of appellant's crimes." Multiplicity and violence were inherent in the jury's verdict, and required no separate findings by the trial court. In contrast, in People v. George, supra, the court found Blakely error where the trial judge had specified five bases for its decision to impose the upper term: "that (1) the crime was serious *465 and involved threats of great bodily injury to the victims; (2) the crime involved planning, sophistication and professionalism; (3) the current offense was more serious than the offense underlying [the defendant's] prior conviction, which was itself serious; (4) at the time [the defendant] committed the current offenses, he was on felony probation; and (5) [the defendant's] prior performance on probation was poor." The Court of Appeal concluded that "the trial court was constitutionally entitled to rely only on the fact that [the defendant] was on probation at the time of the charged offense as a basis for imposing an upper term," and remanded the matter for resentencing. Here, the trial court gave valid reasons for imposing the upper term based on facts found by the jury to be true. We see no violation of Blakely or Apprendi in imposing that sentence.
The issue of whether appellant's consecutive sentencing can be challenged under Blakely is more complex. Section 669 of the Penal Code requires the trial court "[w]hen [the defendant] is convicted of two or more crimes" to "direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively." If the court fails "to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently." (Pen.Code, § 669.) Despite this language, courts have held "there is no ... statutory presumption in favor of concurrent rather that consecutive sentences for multiple offenses except where consecutive sentencing is statutorily required. The trial court is required to determine whether a sentence shall be consecutive or concurrent but is not required to presume in favor of concurrent sentencing." (People v. Reeder (1984) 152 Cal.App.3d 900, 923, 200 Cal.Rptr. 479; accord People v. Sample, supra, 122 Cal.App.4th 206 [18 Cal.Rptr.3d 611].)
The statute does not specify the grounds on which the court's decision to impose consecutive sentencing must lie. Rule 4.425 of the Rules of Court lists the following "[c]riteria affecting the decision to impose consecutive rather than concurrent sentences": "(a) [Criteria relating to crimes] Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other. [¶] (2) The crimes involved separate acts of violence or threats of violence. [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. [¶] (b) [Other criteria and limitations] Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except (i) a fact used to impose the upper term, (ii) a fact used to otherwise enhance the defendant's prison sentence, and (iii) a fact that is an element of the crime shall not be used to impose consecutive sentences." Aggravating and mitigating circumstances are listed in rule 4.421 and rule 4.423, and include such matters as the violence involved in the crime, the degree of cruelty, viciousness, or callousness evidenced by the perpetrator, the vulnerability of the victim, threats made to witnesses, the perpetrator's active or passive role in committing the offense, and the presence or absence of a prior record.
Although a trial court contemplating whether or not to impose consecutive sentencing may and often does consider aggravating and mitigating factors as part of its decisionmaking process, the courts that have addressed the issue therefore have *466 uniformly held that consecutive sentencing is not impacted either by Blakely or its predecessor, Apprendi. In People v. Sykes, supra, 120 Cal.App.4th 1331, 16 Cal.Rptr.3d 317, for example, defendant argued that Blakely "requires that a jury, not a judge, find whether the factors which warrant consecutive sentencing are present." (120 Cal.App.4th at p. 1343, 16 Cal.Rptr.3d 317.) The court concluded that "[n]either Blakely nor Apprendi purport to create a jury trial right to the determination as to whether to impose consecutive sentences." (Id. at p. 1344, 16 Cal.Rptr.3d 317.) The court reasoned that the consecutive sentencing decision does not involve the facts necessary to constitute a statutory offense and that the decision "can only be made once the accused has been found beyond a reasonable doubt to have committed two or more offenses." (Id. at p. 1345, 16 Cal.Rptr.3d 317.) Therefore, Blakely and Apprendi do not extend to "whether the sentences for charges which have been found to be true beyond a reasonable doubt shall be served consecutively." (Ibid.)
Numerous decisions that had reached the same conclusion in the wake of Apprendi were cited in support of the court's decision in Sykes, including People v. Groves (2003) 107 Cal.App.4th 1227, 1230-1231, 132 Cal.Rptr.2d 744, wherein the court stated: "If the specific fact at issue is not an element of the crime but is a factor that comes into play only after the defendant had been found guilty of the charges beyond a reasonable doubt and no increase in sentence beyond the statutory maximum for the offense established by the jury is implicated, then the state may consider this factor based on a lesser standard of proof."
Similarly, in People v. Vonner (2004) 121 Cal.App.4th 801, 17 Cal.Rptr.3d 460, the court held that the consecutive sentencing scheme "is an alternate sentencing scheme, not an enhancement" and "does not increase the penalty beyond the prescribed statutory maximum." (Id. at p. 811, 17 Cal.Rptr.3d 460.) The court in Vonner concluded that Apprendi and Blakely are "relevant only where a judge-made factual determination increases the maximum statutory penalty for the particular crime'" and that "[t]hat did not happen" in the case before it. As the court saw it, "Here the guilty verdicts subjected the appellant to consecutive sentencing which the trial court was authorized to impose. The sentence was not based on any `fact' that the trial court found. The decision was based on the guilty verdicts and the statutory discretion given to the trial court by the Legislature." (121 Cal.App.4th at p. 811, 17 Cal.Rptr.3d 460.)
The court's decision in People v. Vonner was based in part on the rationale of People v. Cleveland (2001) 87 Cal.App.4th 263, 104 Cal.Rptr.2d 641. The issue in Cleveland was whether the rule announced in Apprendi was implicated by the trial court's refusal to apply Penal Code section 654. "Section 654 precludes multiple punishment for a single act or indivisible course of conduct punishable under more than one criminal statute. Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the `intent and objective' of the actor. [Citation.] If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one. [Citation.] If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]" (87 *467 Cal.App.4th at pp. 267-268, 104 Cal.Rptr.2d 641.)
Because of the requirement that the trial court determine the offender's "intent and objective," the defendant in Cleveland contended that application of section 654 ran afoul of Apprendi. (87 Cal.App.4th at p. 270, 104 Cal.Rptr.2d 641.) The Court of Appeal disagreed: "Unlike in the `hate crime' provision in Apprendi, section 654 is not a sentencing `enhancement.' On the contrary, it is a sentencing `reduction' statute. Section 654 is not a mandate of constitutional law. Instead, it is a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty for one's crimes. Thus, when section 654 is found to apply, it effectively `reduces' the total sentence otherwise authorized by the jury's verdict. The rule of Apprendi, however, only applies where the nonjury factual determination increases the maximum penalty beyond the statutory range authorized by the jury's verdict." (Ibid.)
We agree that a trial court's imposition of consecutive sentences does not result in a usurpation of the jury's factfinding powers or appellant's due process rights as long as each sentence imposed is within each offense's prescribed statutory maximum. Appellant committed a multitude of crimes against a multitude of victims. Although our laws permit the trial judge to order the separate sentences imposed for each crime to run concurrently, its decision in this regard is similar to the discretion afforded under section 654, and results in a lessening of the prescribed sentence  not an enhancement. For these reasons, we do not agree that the sentence imposed is invalid under Blakely or Apprendi.

DISPOSITION
The judgment is affirmed.
We concur: EPSTEIN, Acting P.J., and HASTINGS, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B and C of the Factual and Procedural Background and parts A, B, C, and D of the Discussion.
[**] See footnote *, ante.
[5] Counsel did not include count five with that group, because counsel believed it should be combined with count one for a single life without possibility of parole sentence.
[***] See footnote *, ante.