Filed 9/9/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOMAR HERNANDEZ SALVADOR,<br><br>    Defendant and Appellant. | H048162<br>(Santa Clara County<br>Super. Ct. No. C1807599) |

Defendant Jomar Hernandez Salvador pleaded no contest to felony false imprisonment and misdemeanor sexual battery. The trial court granted a three-year term of probation and imposed, among others, conditions requiring Salvador to consent to searches of his electronic devices, and restricting his use of social media and the Internet.

Salvador challenges the probation conditions allowing for searches of his electronic devices and restricting his use of social media and the Internet. He contends the conditions are invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), and he argues they are overbroad in violation of his rights under the First and Fourth Amendments.

For the reasons below, we determine one portion of a probation condition that restricts Salvador's use of the Internet is unconstitutionally overbroad, but we conclude the remaining conditions are valid. We will strike the invalid portion of the challenged probation condition and affirm the judgment as modified.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *Procedural Background*

The prosecution charged Salvador with six counts: count 1—sexual penetration of a person under the age of 16 by a person over 21 (Pen. Code, § 289, subd. (i))[1]; counts 2 and 3—lewd or lascivious act on a child aged 14 or 15 (§ 288, subd. (c)(1)); count 4—felony false imprisonment (§ 237, subd. (a)); count 5—sexual battery (§ 243.4, subd. (a)); and count 6—annoying or molesting a child (§ 647.6, subd. (a)(1)).

Salvador pleaded no contest to count 4 (felony false imprisonment) and count 5 (misdemeanor sexual battery) in exchange for dismissal of the remaining counts. The parties stipulated to a factual basis for the plea without reference to any specific facts or documents, but Salvador entered a *Harvey*[2] stipulation as to count 6 (annoying or molesting a child).

The trial court suspended imposition of sentence and granted a three-year term of probation. Over Salvador's objections, the court imposed the following probation conditions, among others:

1. He shall consent to searches of his electronic devices for any text messages, voicemail messages, call logs, photographs, e-mail accounts, social media accounts (including but not limited to Facebook, Instagram, Twitter, Snapchat or any other site which the Probation Officer informs him of) or applications pertaining to such accounts;

2. he shall agree to provide all passwords necessary to access or search such electronic devices;

3. his computer and all electronic devices shall be subject to forensic analysis;

5. he shall not knowingly enter any social networking sites, (including but not limited to Facebook, Instagram, Twitter, Snapchat or any other site which the

---

[1] Subsequent undesignated statutory references are to the Penal Code.
[2] *People v. Harvey* (1979) 25 Cal.3d 754.

2

Probation Officer informs him of), or applications pertaining to such accounts, nor post any ads, either electronic or written, unless approved by the Probation Officer;[3]

6. he shall report all personal e-mail addresses and websites with passwords to the Probation Officer within five days;

7. he shall not knowingly access the Internet or any other online service through use of a computer, or other electronic device at any location (including his place of employment) without prior approval of the Probation Officer, and he shall not knowingly possess or use any data encryption technique program; and

8. he shall not clean or delete Internet browsing activity and must keep a minimum of four weeks of history.

Salvador objected to these conditions on the grounds they were invalid under *Lent* and violated his First Amendment rights. In particular, he argued there was an insufficient nexus between the conditions and the offenses. In overruling Salvador's objections, the trial court found the conditions were reasonably related to the offenses because he used electronic devices to communicate with the victims.

### B. Facts of the Offenses[4]

Salvador, a 41-year-old single man, rented space for five months in the living room of a residence where two sisters lived: 18-year-old D.D., and 15-year-old M.D. The sisters' friend, 15-year-old A.D., visited them at the residence.

D.D. told police she was watching a movie with Salvador in the living room around 2:00 a.m. one night when he began talking to her in a sexual manner. He then put his hands around her throat to choke her, got on top of her, and put his hand over her mouth. D.D. was able to get away and went to her bedroom.

---

[3] The trial court struck the condition numbered "4" in the record.
[4] The facts are taken from the probation report, which summarized the police reports.

M.D. said she and her sister were watching television with Salvador around 11:00 p.m. one night when the sister went to her bedroom, leaving M.D. alone with Salvador. When M.D. said her back was hurting, Salvador offered to give her a massage, so she sat on a chair and he began to massage her. Salvador put his left hand under her shirt and bra, touching and squeezing her breast. He put his other hand under her underwear, rubbed her vagina, and inserted a finger into her vagina. He stopped when M.D.'s father entered the room.

A.D. stated she had a conversation with Salvador in which he offered to buy her a sex toy and she accepted the offer. Later, Salvador asked A.D. if she had used the toy, and she said she had not. A.D. said Salvador then replied, "[W]ell, when you use it, do you mind showing me how you use it?"

The victims disclosed these incidents to the mother of one of their friends, and the mother contacted the police. After the police arrested and questioned Salvador, he admitted he put his hands on D.D.'s neck and choked her while they were wrestling. He also admitted he bought a sex toy for A.D. because he thought it would help her stay away from her ex-boyfriend. He denied M.D.'s allegations.

The probation report stated that Salvador "used a cellular phone to exchange social media messages with the victims on his case."

## II. DISCUSSION

Salvador challenges the above probation conditions as invalid under *Lent* and as violations of his constitutional rights under the First and Fourth Amendments. The Attorney General contends the conditions are valid because there is a nexus to the offenses in that Salvador used an electronic device to communicate with the victims. The Attorney General further argues the conditions are permissible under the Fourth Amendment and do not unduly burden Salvador's First Amendment rights.

4

## A. *Legal Principles*

"A condition of probation will not be held invalid unless it: (1) has no relationship to the crime of which the offender was convicted; (2) relates to conduct which is not in itself criminal; and (3) requires or forbids conduct which is not reasonably related to future criminality." (*People v. Castellanos* (2020) 51 Cal.App.5th 267, 275, citing *Lent*, *supra*, 15 Cal.3d at p. 486.) The *Lent* test is conjunctive; all three prongs must be found before a reviewing court will invalidate the condition. (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) The third prong, relating to future criminality, "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1122 (*Ricardo P.*).) This prong "requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Id.* at p. 1121.) In applying these principles, we review conditions of probation for abuse of discretion, looking to whether the condition is " 'arbitrary or capricious' or otherwise exceeds the bounds of reason under the circumstances." (*Ricardo P.*, at p. 1118, quoting *Olguin*, at p. 384.)

Additionally, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) "[W]e review constitutional challenges to probation conditions de novo." (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).)

5

## B. *Validity of the Search and Monitoring Conditions*

Based on *Lent* and the Fourth Amendment, Salvador first challenges the conditions requiring him to make his electronic devices available for searches of communications in the form of texts, emails, voicemails, and so forth; to provide his email addresses and passwords for the devices and websites; and to maintain his browser history (conditions numbered 1, 2, 3, 6, and 8 above). As to the *Lent* test, the Attorney General concedes these conditions meet the second prong because they relate to conduct that is not itself criminal. The Attorney General argues the conditions are valid under the other prongs of the *Lent* test because Salvador used a cellular phone to exchange messages with the victims on social media.

Salvador argues there was no nexus between the commission of the offenses and his use of social media to communicate with the victims. The record does not include any facts about the content or timing of those communications. There is no evidence Salvador used social media to meet, solicit, or groom the victims, or that the communications facilitated his commission of the offenses. He points out that he lived in the same residence as two of the victims, such that he could communicate with them in person rather than relying on social media. The victim A.D. did not live in the same residence, but she visited the sisters there.

The Attorney General argues the nexus is nonetheless sufficient to justify the conditions based on this court's analysis in *Appleton*, *supra*, 245 Cal.App.4th 717. In that case, the defendant met the 16-year-old victim on Grindr, a social media application described by another court as "a web-based 'hook-up' application . . . that matches users based on their interests and location." (*Herrick v. Grindr LLC* (2d Cir. 2019) 765 Fed.Appx. 586, 588.) After meeting, Appleton and the victim maintained a consensual relationship in person for some period—at least several months—after which Appleton committed the offense. There was no evidence Appleton used social media to facilitate the commission of the offense in any specific way apart from the fact he had previously

6

met the victim through social media. On appeal, Appleton challenged several electronic search conditions similar to those imposed in this case. We recognized that the nexus between the offense and the conditions was "somewhat attenuated" but under the abuse of discretion standard of review, we held the conditions were not invalid under the *Lent* test. (*Appleton,* at p. 724.)

As in *Appleton*, the nexus between the offenses and Salvador's use of electronic devices is somewhat attenuated, but not altogether absent. Applying the abuse of discretion standard of review, we cannot say the trial court's finding of a nexus was arbitrary or capricious, or outside the bounds of reason. (*Ricardo P*., *supra*, 7 Cal.5th at p. 1118.) And while the trial court did not make any findings as to future criminality, the connection between the defendant's use of social media and potential future sex offenses is more than just an abstract or hypothetical relationship; predators online commonly use social media to contact and groom minors.[5] Accordingly, we conclude the trial court's imposition of the search and monitoring conditions was not an abuse of discretion under *Lent*.

Because the search and monitoring conditions impose limitations on Salvador's Fourth Amendment rights, we must also consider whether the conditions are closely tailored to the purposes of the conditions. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) In *Appleton*, we held the electronic search condition was unconstitutionally overbroad because it effectively allowed law enforcement to search for anything on the devices. "[A] search of defendant's mobile electronic devices could potentially expose a large volume of documents or data, much of which may have nothing to do with illegal activity. These could include, for example, medical records, financial records, personal

---

[5] See Office of Juvenile Justice and Delinquency Prevention, U.S. Department of Justice, Highlights of the Youth Internet Safety Survey (Mar. 2001) <https://www.ojp.gov/pdffiles1/ojjdp/fs200104.pdf> [as of Sept. 8, 2022], archived at <https://perma.cc/JD58-KXAN>.

diaries, and intimate correspondence with family and friends." (*Appleton*, *supra*, 245 Cal.App.4th at p. 725.)  Because these intrusions on the defendant's privacy went beyond what was reasonably necessary to serve the purposes of the probation condition—deterring or detecting future conduct related to sexual offenses—we struck the condition and remanded for the trial court to fashion a condition more narrowly tailored to its purposes.

Here, the sentencing court imposed a somewhat narrower set of search parameters, allowing probation or law enforcement to search text messages, voicemail messages, call logs, photographs, e-mail accounts, and social media accounts or applications.  While not perfectly circumscribed, these subsets are reasonably defined to exclude most of the sensitive areas we identified in *Appleton* as core to Salvador's legitimate privacy interests—e.g., medical and financial records, or personal diaries.  And while the conditions require Salvador to furnish all passwords and make his electronic devices wholly available for forensic analysis, we will construe the first condition to mean that any actual searches or analyses conducted on the devices would be limited to the items set forth in that condition (text messages, voicemail messages, call logs, photographs, email accounts, social media accounts, and the applications pertaining to those accounts). (See *People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [probation condition should be narrowly drawn to avoid infringing constitutional rights].)  With these limitations, we hold the search and monitoring conditions as so defined are tailored with sufficient specificity to avoid unconstitutionally intruding on Salvador's Fourth Amendment rights.

### C. *Validity of the Conditions Prohibiting the Use of Social Media and the Internet*

As set forth in the conditions numbered five and seven above, the trial court prohibited Salvador from entering or posting to social networking sites or related applications without prior approval from his probation officer, and prohibiting him from accessing the Internet or any online service without prior approval.  Salvador challenges these conditions based on *Lent* and as a violation of his First Amendment rights to

freedom of speech and association.  The Attorney General argues the conditions are valid under *Lent* and sufficiently tailored to avoid infringing the First Amendment.

With respect to the *Lent* test, the analysis of the fifth condition prohibiting Salvador from entering or posting to social media sites is similar to the analysis in section B above:  Because Salvador used social media to text with the victims, the nexus to this condition, while attenuated, is sufficiently established such that imposition of the condition is not an abuse of discretion under the *Lent* test.

But to the extent the fifth condition implicates Salvador's First Amendment rights, it must also be narrowly tailored to its purposes.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) The same test applies to the seventh condition, which restricts Salvador's access to the Internet more generally.  "Restrictions upon access to the Internet necessarily curtail First Amendment rights."  (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1236 (*Stevens*).) " 'The architecture of the Internet, as it is right now, is perhaps the most important model of free speech since the founding [of the Republic].  Two hundred years after the framers ratified the Constitution, the Net has taught us what the First Amendment means.... The model for speech that the framers embraced was the model of the Internet—distributed, noncentralized, fully free and diverse.' [Citation.]  'Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox.  Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer.' [Citation.]"  (*Ibid.*)

The use of prior restraint to prohibit speech is particularly disfavored.  "A prior restraint is an administrative or judicial order that forbids certain speech in advance of the time the communication is to occur. [Citation.]"  (*San Jose Mercury News, Inc. v. Criminal Grand Jury* (2004) 122 Cal.App.4th 410, 416.)  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."  (*Nebraska Press Ass'n v. Stuart* (1976) 427 U.S. 539, 559.)  The Attorney General does not dispute that the fifth and seventh conditions constitute prior

9

restraints on Salvador's ability to engage in communications that would otherwise be protected under the First Amendment.

In *Stevens*, the court of appeal invalidated a broad prohibition on a parolee's use of the computer and Internet under the First Amendment, holding the condition "bore no relation to [parolee's] conviction for child molestation and imposed a greater restriction of his rights than was reasonably necessary to accomplish the state's legitimate goal." (*Stevens*, *supra*, 119 Cal.App.4th at p. 1239.) The Attorney General argues the conditions imposed here are nonetheless valid under *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*). In *Pirali*, the defendant was convicted of possession of child pornography on his computer, and the trial court imposed probation conditions substantially similar to the fifth and seventh conditions imposed here. We held both conditions were sufficiently narrowly tailored to withstand the defendant's First Amendment challenge. (*Id.* at pp. 1349-1350.) The fact that the defendant could still access social media and the internet with the prior approval of his probation officer was central to our analysis. (*Id.* at p. 1350.) On that basis, we distinguished the conditions from the parole condition struck down in *Stevens*.

Here, with respect to the fifth probation condition restricting Salvador's access to social media sites, we conclude *Pirali* controls. Any burden on Salvador's use of social media is reasonably tempered by his ability to obtain prior approval from the probation officer. And the use of social media is not so necessary to the activities of daily living that this requirement would unduly burden Salvador's rights.

With respect to the seventh condition, however, which restricts Salvador's access to the Internet more generally, *Pirali* is distinguishable. First, there is nothing in the record to support a restriction on Internet access more generally, as compared with the restriction limited to social media. In *Pirali*, the defendant accessed pornography on his computer, materials which are distributed by means of accessing websites through the internet. Here, the factual nexus was Salvador's use of social media to contact the

victims, not his access to materials on any other part of the Internet. The general restriction against Internet access thereby sweeps far more broadly than necessary to serve the purposes of the condition—preventing or deterring contact with minors for sexual purposes.

Second, we decided *Pirali* in 2013. Since that time, the Internet has become even more central and commonplace in the lives of ordinary people; it is now practically unavoidable in daily life. Many more people today use the Internet to work from home, follow the news, or conduct business and commercial transactions such as banking and paying bills. No valid purpose is served by preventing Salvador from engaging in the kinds of Internet access that have become common and ubiquitous—e.g., performing work-related tasks, accessing or commenting on news sites, or conducting commercial or business transactions in ways that require engaging in protected speech. We conclude the limitation we relied on in *Pirali*—that the probationer could still use the Internet by obtaining prior approval from his probation officer—is not adequate here. Access to some part of the Internet is so necessary and frequent as a part of daily life that it may become unduly burdensome to obtain a probation officer's approval for every use of it. With respect to some offenses—e.g., possession or distribution of child pornography, as in *Pirali*—such a burdensome condition might be justified or necessary. But in this case, it is not. Finally, the above conditions restricting access to social media and permitting law enforcement to search Salvador's electronic devices for communications over social media are adequate to achieve the legitimate purposes of the conditions.

For the reasons above, we conclude a portion of the seventh condition is unconstitutionally overbroad in violation of Salvador's First Amendment rights, and we will strike that portion of the condition. Accordingly, we do not address the validity of this condition under *Lent*, and because Salvador does not challenge or address the last clause of the condition restricting his use of encryption, we will leave that portion intact.

11

### III.   DISPOSITION

The portion of the probation conditions stating, "The defendant shall not knowingly access the Internet or any other on-line service through use of a computer, or other electronic device at any location (including place of employment) without prior approval of the Probation Officer," is stricken.  As so modified, the judgment is affirmed.

_____
                        Greenwood, P. J.


WE CONCUR:




_____
           Grover, J.






_____
           Lie, J.




People v. Salvador
H048162

Trial Court:                                              Santa Clara County Superior Court
                                                         Superior Court No.: C1807599

Trial Judge:                                             The Honorable David A. Cena


Attorneys for Defendant and Appellant          William Howard Safford
JOMAR HERNANDEZ SALVADOR:                      Safford Legal



Attorneys for Plaintiff and Respondent          Rob Bonta,
THE PEOPLE:                                     Attorney General of California

                                               Lance E. Winters,
                                               Chief Assistant Attorney General

                                               Charles C. Ragland,
                                               Senior Assistant Attorney General

                                               Daniel Rogers,
                                               Supervising Deputy Attorney
                                               General

                                               Eric A. Swenson,
                                               Supervising Deputy Attorney
                                               General

                                               Jennifer Bao Truong
                                               Deputy Attorney General

H048162
People v. Salvador