# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 17, 2004

## STATE OF TENNESSEE v. ABEL TORRES

**Appeal from the Circuit Court for Warren County**
**No. F-8032     Larry B. Stanley, Jr., Judge**

_____

### No. M2004-00559-CCA-R3-CD - Filed February 4, 2005

_____

A Warren County jury convicted the defendant, Abel Torres, of one count of attempted especially aggravated robbery and two counts of attempted second degree murder, Class B felonies, and the trial court sentenced him to twelve years for each conviction, to be served consecutively for an effective sentence of thirty-six years in the Department of Correction (DOC). On appeal, this court affirmed the defendant's convictions but modified the length of his sentences from twelve years to ten and remanded the case for a determination by the trial court of the reasons justifying the imposition of consecutive sentencing. State v. Abel Caberra Torres, No. M2001-01412-CCA-R3-CD, Warren County (Tenn. Crim. App. June 10, 2003). On remand, the trial court again imposed consecutive sentencing and the defendant appeals, claiming the trial court erred under both state law and the rule announced in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004). The state contends the trial court properly sentenced the defendant. We affirm the trial court's imposition of consecutive sentencing but conclude that Blakely requires us to modify the defendant's sentences from ten years to eight for an effective sentence of twenty-four years.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Modified in Part

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Dan T. Bryant, McMinnville, Tennessee, for the appellant, Abel Torres.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; and Clement Dale Potter, District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's attempting to rob a store and kill two witnesses.

On September 14, 1999, Angela McCormick, the victim of the attempted robbery and one of the attempted second degree murders, was the clerk on duty at the Pit Stop North convenience market in McMinnville. At 9:00 p.m., she closed the store, locked the doors, and walked to her car. After starting her car and turning on the headlights, the victim observed an individual standing on an embankment behind the store. He was black, wore a white shirt, and held a long gun at his side. As she attempted to drive away, her car "died" and the perpetrator fired a shot into her car. Bullet fragments struck her shoulder and a finger. Unable to re-start her car, the victim left her vehicle and ran towards a truck where Tim Young was using a pay telephone. Young drove the victim away from the market and located a police officer. After she was taken to the hospital, doctors removed the bullet fragment from the victim's shoulder. Later, additional surgery was required to remove the fragment from her finger. Pieces of glass from the windshield were embedded in her head. Ms. McCormick described her assailant as "kind of a bigger person," but was unable to make an identification.

While preparing to use the pay telephone, Young had seen a "figure" on an embankment at the edge of the parking lot tracking the victim's movements to her car. He had observed the victim enter her car before the assailant fired a large caliber rifle that sounded as though the "whole parking lot [had] exploded." When he saw the victim emerge from her car, fall, and run towards his truck, Young heard her say that she had been shot in the head and needed his help. As she got in the truck, the perpetrator fired a second shot in their direction and, as Young drove away, he heard a third shot. Young then saw a police cruiser in traffic and obtained assistance for the victim. Young, the victim of the second attempted second degree murder charge, was unable to identify the shooter.

Torres, slip op. at 1-2.

At the resentencing hearing, McMinnville Police Department Detective Barry Powers testified that he was involved in the investigation of the shooting at the Pit Stop. He said he interviewed the then sixteen-year-old defendant after his arrest at the McMinnville Police Department. Detective Powers said that during the interview, the defendant "just sat there real cold." He said, "It seemed like he just enjoyed talking about shooting the lady" because of "the way he would act, his attitude and stuff." Detective Powers said that when the defendant was talking about the shooting, "he would smile like he was enjoying it." He said that he asked the defendant how he would have felt if the victim had died as a result of the shooting and that the defendant answered,

"I would have felt the same." Detective Powers said the defendant showed no remorse of any kind during the interview.

McMinnville Police Department Detective Marty Cantrell testified that he was also involved in the investigation. He said the defendant used a "Communist block military assault rifle" during the shootings. Detective Cantrell said the defendant admitted attempting to kill both victims because his mask had come off and he was concerned that "he could possibly be identified." Detective Cantrell testified that he was also present at the McMinnville Police Department during the interview of the defendant. He said the defendant showed no compassion or remorse. Detective Cantrell said that he received a call concerning the defendant from Corrections Officer Betsy Farley, who worked at the Cookeville Detention Center where the defendant was incarcerated while awaiting trial. He said that Officer Farley told him that the defendant said to her, "If the Judge don't let me out of here, I am going to shoot him too." In addition to the testimony of the investigating officers, both victims testified at the resentencing hearing.

After listening to the witnesses' testimony and the arguments of counsel, the trial court ordered that the defendant serve his three ten-year sentences consecutively. In justifying its consecutive sentencing order, the trial court found that the defendant was "a dangerous offender whose behavior indicate[d] little or no regard for human life," and that the defendant "had no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). The trial court also found that

> In considering the dangerousness of this offender, I have considered
> the testimony regarding his demeanor and actions afterwards. . . .
> [The defendant] would smile when talking about shooting people. He
> was "cold" during the interview, and he seemed to enjoy talking
> about shooting this lady. That indicates very clearly to me that he is
> . . . someone who is not remorseful. . . . It is obvious going back to
> the fact that when the investigator said that he would have felt the
> same if she died. . . . That clearly shows no regard for human life. .
> . . Confinement for an extended period of time is necessary to protect
> society from the defendant's unwillingness to lead a productive life,
> and the defendant's resort to criminal activity in furtherance of the
> defendant's anti-social lifestyle. [District Attorney General] Potter
> raised some issues there that were relevant about drug use. What he
> did is anti-social. I don't want to work or earn or maybe do without
> something, so I will take a high powered assault rifle and . . . rob
> someone to get what I want. That is resorting to criminal activity in
> furtherance of an anti-social lifestyle. His unwillingness to lead a
> productive life? To that extent, to that point, he hadn't. Confinement
> for this gentleman based on all of the proof, a lot of which I have
> already mentioned about his lack of remorse and not feeling any
> different if the lady dies, and being calculated and cold, and more

than once trying to kill someone who could identify him; I wouldn't feel safe with him here. . . . He threatened the prior Judge when he was in confinement in Cookeville. Yes, an extended confinement for an extended period of time is necessary. . . . Finally, the aggregate length of the sentence as it reasonably relates to the offenses. . . . Thirty (30) years in this case is by no means unreasonable for what he did. This gentleman is not mentally deficient. He was able to figure and calculate . . . . I certainly wouldn't have thought thirty-six (36) was excessive, and I sure don't think thirty (30) is. . . .

Therefore, based on everything that I just said, I think that the discretionary consecutive sentencing does apply, and the three (3) ten year sentences should run consecutively, for a total of thirty (30) years.

## Analysis

The defendant contends that the trial court erred in imposing consecutive sentencing because (1) the record does not support consecutive sentencing under the test articulated in State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), (2) the trial court improperly relied on unreliable hearsay, and (3) the trial court's findings necessary to justify consecutive sentencing violate the defendant's right to trial by jury. He also asserts that right was violated by the enhancement of his sentences. The state contends that the record supports consecutive sentencing, that the defendant has waived any Blakely related issue, and that Blakely does not apply to consecutive sentencing determinations. We conclude that the trial court properly imposed consecutive sentencing, that Blakely does not affect consecutive sentencing determinations, but that the Sixth Amendment requires us to modify the defendant's enhanced sentences.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

[T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement

-4-

> factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Unless enhancement factors are present, the presumptive sentence to be imposed for a Class B felony is eight years, the minimum in the range. T.C.A. § 40-35-210(c). Our sentencing act provides that, procedurally, the trial court is to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

In conducting our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

Consecutive sentencing is guided by T.C.A. § 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant is a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." For dangerous offenders, though, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995); see State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). Rule 32(c)(1), Tenn. R. Crim. P., requires that the trial court "specifically recite the reasons" behind its imposition of a consecutive sentence. See State v. Donnie Thompson, No. M2002-01499-CCA-R3-CD, Maury County (Tenn. Crim. App. Mar. 3, 2003).

## I. Record Insufficient to Support Consecutive Sentencing/Trial Court's Use of Impermissible Hearsay.

We begin by noting that the trial court complied with the purposes and principles of the 1989 Sentencing Act. Therefore, we review the trial court's imposition of consecutive sentences de novo with a presumption of correctness. See T.C.A. § 40-35-401(d).

The defendant asserts that the sentencing court's consideration of his threat against the judge's life as a factor supporting the imposition of consecutive sentencing was improper. He claims the statement was hearsay and should not have been considered by the trial court when it imposed consecutive sentencing. The state contends that the statement is reliable hearsay and that the trial court properly considered it as such. See T.C.A. § 40-35-209(b); State v. Taylor, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1987). It also contends that the defendant was given a fair opportunity to rebut the hearsay as Corrections Officer Farley was included in its pretrial witness list. T.C.A. § 40-35-209(b).

At the sentencing hearing, the trial court ruled that it could consider the Corrections Officer's statement, analogizing it to a presentence report which the trial court stated could be relied "on in the sentencing of [a] defendant." The court further found that the defense had a fair opportunity to rebut the reliable hearsay because the prosecution had provided the Corrections Officer's name to the defense as a possible witness during pretrial discovery.

On appeal, the defendant argues "that this hearsay statement from Detective Cantrell was not part of the pre-sentence report and was not admitted as an exception to the hearsay rule as set forth in the Tennessee Rules of Evidence." We note, however, that the defendant failed to address why Detective Cantrell's statement does not constitute reliable hearsay at the resentencing hearing and in his appellate brief.

Our sentencing statutes provide that

> reliable hearsay including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted; provided, that this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or Tennessee.

Id.

In Taylor, the trial court relied on "rank hearsay reports prepared by agents of the Tennessee Bureau of Investigation" (TBI) when denying the defendant alternative sentencing under the Community Corrections Act. 744 S.W.2d at 921. Specifically, the TBI reports indicated that the defendant was involved in illegal drug transactions "to a great extent," notwithstanding the fact that the record was devoid of any other "credible evidence to support this finding." Id. This court held that the trial court improperly considered the TBI reports because they were not reliable hearsay within the meaning of T.C.A. § 40-35-209(b). Id. We believe that the facts of this case are distinguishable from Taylor, and given the fact that the defendant has failed to address on appeal why Detective Cantrell's statement was not reliable hearsay, we conclude the trial court did not err in considering the statement when imposing consecutive sentencing.

In any event, we conclude that the record supports the trial court's imposition of consecutive sentencing independent of the hearsay statement. The trial court made extensive findings to support its imposition of consecutive sentencing. Among other things, it noted that the circumstances of the crimes were extremely aggravated, that the defendant showed no remorse, that the defendant displayed no regard for human life when he stated that he would feel the same if he had killed the victim, and that society needed to be protected from the defendant's anti-social lifestyle based upon his prior and continuous drug use, which, it found, resulted in the defendant committing the robbery and attempted murders. The trial court also found that the aggregate sentence of thirty years was reasonably related to the seriousness of the offenses. We conclude the trial court was justified in imposing consecutive sentencing.

## II. **Blakely**

The defendant contends that the trial court violated the rule announced in Blakely when it found facts necessary for the imposition of consecutive sentencing by a preponderance of the evidence. He also contends that because his case is still on direct review, Blakely requires us to reduce his sentences to the presumptive minimum of eight years for each Class B felony conviction. We conclude that because the defendant's case is still on direct appeal, his Blakely arguments are properly before us. See Schriro v. Summerlin, ___ U.S. ___, ___, 124 S. Ct. 2519, 2522 (2004) (holding that Supreme Court decisions which result in a "new rule" apply "to all criminal cases still pending on direct review").

This court has previously held that Blakely does not affect consecutive sentencing determinations because "Blakely and Apprendi deal[] with the range of punishment imposed for a single offense, not whether consecutive sentencing may be applied in cases where the defendant has been duly convicted of multiple offenses." State v. Earice Roberts, No.W2003-02668-CCA-R3-CD, Shelby County (Tenn. Crim. App. Nov. 23, 2004), app. filed (Tenn. Jan. 18, 2005) (citing People v. Vaughn, 19 Cal. Rptr. 3d 460, 462-63 (Cal. Ct. App. 2004); State v. Abdul A. Abdullah, No. A-1982-02T4, 2004 WL 2281236, at *17 (N.J. Super. Ct. App. Div. Oct. 12, 2004)). We agree with Roberts and likewise hold that Blakely does not affect consecutive sentencing determinations.

In reducing the defendant's sentences for his three Class B felony convictions from twelve years to ten, this court in reapplying pertinent enhancement factors concluded

> Enhancement factors [(2)], that the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range, and [(3)], that the defendant was a leader in the commission of an offense involving two or more criminal actors, are applicable to all three of the defendant's sentences. Enhancement factor [(10)], that the defendant employed a firearm during the commission of the offense, is applicable to the defendant's sentences for attempted second degree murder. There are no mitigating factors applicable.

-7-

<u>Torres</u>, slip op. at 13. The record reflects that because the defendant had no prior convictions, this court's reapplication of factor (2) was predicated upon the defendant's admitting using marijuana and other illegal drugs to the presentence report officer.

In <u>Blakely</u>, the United States Supreme Court held that the Sixth Amendment guarantee to jury trial encompassed the right to have a jury determine all essential facts necessary for the imposition of sentencing. 542 U.S. at __, 124 S. Ct. at 2537. The Court explained,

> Our precedents make clear, however, that the "statutory maximum" for <u>Apprendi</u>[v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)] purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

<u>Id.</u> We note that the Supreme Court recently extended <u>Blakely</u> to the federal sentencing guidelines. See <u>United States v. Booker</u>, 543 U.S. ___, 125 S. Ct. 738 (2005). Relevant to previous decisions of this court regarding <u>Blakely</u>, the Court stated,

> [W]e must apply today's holdings . . . to all cases on direct review. See <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past"). <u>See also</u> <u>Reynoldsville Casket Co. v. Hyde</u>, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (civil case); <u>Harper v. Virginia Dept. of Taxation</u>, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (same). That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test.

<u>Id.</u>

In the present case, the defendant did not object to the trial court's enhancement of his sentence as a violation of his right to trial by jury. We believe, though, notwithstanding Booker, that the defendant's Blakely related issues are properly before us. We continue to conclude that because our supreme court expressly held in Graham v. State, 90 S.W.3d 687, 692 (Tenn. 2002), that Apprendi did not affect the ability of our trial courts to consider all enhancing and mitigating factors within the appropriate range, Blakely essentially announced a new rule in Tennessee which "constitutes a 'clear break' with the past." Griffith, 479 U.S. at 328, 107 S. Ct. 708; see also Apprendi, 530 U.S. at 481, 120 S.Ct. 2348; State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, White County, slip op. at 15-25 (Tenn. Crim. App. Nov. 30, 2004), app. filed (Tenn. Jan. 28, 2005). However, because the defendant previously contested the trial court's enhancement of his sentence in his first appeal, we must consider whether the "law of the case" doctrine applies to his Blakely argument.

In State v. Jefferson, 31 S.W.3d 558 (Tenn. 2000), our supreme court addressed the "law of the case" doctrine, explaining,

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.
>
> The law of the case doctrine is not a constitutional mandate nor a limitation on the power of a court. Rather, it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts.
>
> Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. There are limited circumstances which may justify reconsideration of an issue which was [an] issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the

> evidence in the initial proceeding; (2) the prior ruling was clearly
> erroneous and would result in a manifest injustice if allowed to stand;
> or (3) <u>the prior decision is contrary to a change in the controlling law
> which has occurred between the first and second appeal</u>.

31 S.W.3d at 560-61 (quoting <u>Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.</u>, 975 S.W.2d 303, 306 (Tenn. 1998)) (emphasis added). We conclude that the "law of the case" doctrine does not bar our consideration of the defendant's <u>Blakely</u> argument as <u>Blakely</u> was decided between the defendant's first and second appeals.

When the trial court applied enhancement factor (3), that the defendant was a leader of an offense involving two or more criminal actors, and (10), that the defendant employed a firearm during the commission of the offense to increase the length of his sentences, it violated his right to have a jury determine all the essential facts necessary to the imposition of punishment. We conclude this error was not harmless beyond a reasonable doubt. <u>See</u> <u>Walters</u>, slip op. at 23-25. Therefore, we review the enhancement of the defendant's sentences <u>de</u> <u>novo</u> with no presumption of correctness. In this regard, "we cannot violate <u>Blakely</u> in our determination of appropriate enhancement factors." <u>Id.</u> at 26.

We also conclude that the portion of the presentence report relating to the defendant's admission of prior drug use does not contain sufficient guarantees of trustworthiness to justify application of factor (2) for prior criminal history without offending <u>Blakely</u>. Because no enhancement factors can be applied to the defendant's sentences without violating his right to trial by jury, we modify his sentences from ten years to eight years.

Based upon the foregoing and the record as a whole, we affirm the trial court's imposition of consecutive sentencing, but we modify each of the defendant's sentences to eight years.

_____
JOSEPH M. TIPTON, JUDGE