Filed 10/20/20  P. v. Vasquez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B300560 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA473165) |
| v. | |
| HECTOR DAVID VASQUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Terry A. Bork, Judge.  Affirmed.

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Roberta L. Davis and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Hector David Vasquez appeals from a judgment which sentences him to county jail for misdemeanor assault and vandalism. Vasquez asserts the trial court erred when it admitted the responding officer's body camera video. We affirm.

**FACTS**

Vasquez and Louis Mora were roommates in a board and care facility. On November 25, 2018, Vasquez showed a knife to Mora while they were in the bedroom and threatened to "get" him. He did not otherwise approach or harm Mora with the knife. Mora froze out of fear, but eventually left the room to sit on the couch in the living room. Immediately after Mora left the bedroom, Vasquez began to throw things, including the television. He tore the smoke alarms from the ceiling. Vasquez also hit Mora three times on the cheek.

Mora went next door and told Derek Sanchez, another resident, and Sharon Coye, the manager of the facility, about what happened. Sanchez called the police. When Coye arrived next door, she observed Vasquez "tearing [the house] apart." She also observed Vasquez "snatching" the smoke detector down from the ceiling. Although she did not see Vasquez break any windows, she heard glass shattering in the bathroom and bedroom while Vasquez was in those rooms. She asked Vasquez, "What the hell [are] you doing?"

Sanchez also observed the front window and bathroom window were broken. He noticed two holes in the ceiling but did not think they were a result of damaged smoke detectors. Sanchez did not see any bruising on Mora's face.

Vasquez was charged with one felony count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1);[1] count 1) and one misdemeanor count of vandalism (§ 594, subd. (a); count 2).

At trial, the jury heard testimony from Mora, Coye, Sanchez, and one of the responding officers, Officer Stephen Geiger, regarding the incident as described above. Mora admitted his memory was not good. He was unable to recall details of the incident or of the trial proceedings from the previous day. Officer Geiger testified Mora had a split lip and Vasquez had injuries to the back of his head. The prosecution played portions of video retrieved from Officer Geiger's body camera to the jury over the defense's objection. The video showed a smoke alarm dangling from the ceiling as well as a hole in the ceiling.

The jury found Vasquez guilty of misdemeanor vandalism but could not reach a verdict on the felony assault charge. The court declared a mistrial as to that count and Vasquez later pleaded no contest to misdemeanor assault. The trial court sentenced Vasquez to a total of 728 days in county jail. Vasquez appealed both convictions.

## DISCUSSION

Vasquez contends Officer Geiger's body camera video should have been excluded. In the alternative, Vasquez argues the trial court should have instructed the jury regarding late-filed discovery, such as in CALCRIM No. 306.[2] The parties agree the

---

[1]    All subsequent section references are to the Penal Code.

[2]    CALCRIM No. 306 provides in pertinent part: "Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to

3

video was turned over to defense counsel late and without good cause in violation of section 1054.1. We conclude the trial court did not abuse its discretion to admit portions of the video into evidence. In any event, any error resulting from its admission was harmless.

## I.    Proceedings Below

Trial began on Monday, June 3, 2019. Four days before trial, on Thursday, May 30, 2019, the prosecutor sent defense counsel a hyperlink to the video footage from Officer Geiger's body camera. The video was approximately two hours long and recorded Officer Geiger's interview with Mora and displayed his walk through of the house. The prosecutor included the recording in his exhibit list, which was filed on the first day of trial.

When the prosecutor began to play parts of the video to the jury during Mora's testimony, defense counsel objected. At sidebar, the parties discussed the late disclosure and other issues associated with the video. The trial court overruled all defense objections, except the one based on late discovery, which it took up after the jury was excused for the day. In the meantime, the prosecutor continued to use portions of the video to question Mora.

---

follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial. An attorney for the (People/defense) failed to disclose: <describe evidence that was not disclosed> [within the legal time period]. In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

The following day, defense counsel raised the issue of late discovery and sought to exclude the video. The prosecutor conceded the People did not timely fulfill their discovery obligation but explained it was because the prosecution believed the parties would reach a plea agreement. "[A]s soon as this matter was set for trial . . . , all discovery was requested, and [the prosecutor] . . . turned [it] over as early as it was available to [the prosecution]." The prosecutor argued "everybody acted in good faith here to get everything to the defense as soon as possible." The trial court deferred its decision until the end of the day.

After the jury was excused for the day, defense counsel again moved to exclude the video or, alternately, he requested a late-discovery instruction. He stated the hyperlink was sent to him late in the day on Thursday, May 30, but he did not see it until Monday, June 3, because he had taken Friday off. Defense counsel also complained the recording of the 911 call was not disclosed until that morning, even though the case had been ongoing for six months. He asserted untimely disclosure was commonplace. Defense counsel urged the trial court to exclude the late discovery so the "People will start following their obligations of discovery." Otherwise, there were no consequences for the People's failure to provide timely discovery.

The prosecutor explained the final pretrial conference was held on May 29, 2019. At that point, the calendar district attorney made a request to the investigating officer "to reissue any body worn video to [the prosecutor's office]." The body camera file was created at 9:00 a.m. on May 30, 2019, and an email with the link to it was sent to defense counsel by 3:55 p.m. Records showed the file was not downloaded from the server until noon on June 3, 2019. The prosecutor acknowledged the People

were not absolved of their discovery obligations. However, "in a busy calendar court like this one, not every case gets worked up in entirely th[e] way that it should."

The prosecutor further argued it was not appropriate to address systemic discovery delays by the D.A.'s office. The prosecutor instead suggested defense counsel "take it up with [the D.A.'s] office and the police department if they want to have a discussion about some kind of systemic problem. . . ." Defense counsel disputed the prosecutor's characterization of their negotiations, indicating "clearly we were nowhere near . . . coming to a resolution [of the case]."

The trial court stated it was tempted to "send the word down the line, as it were, that the D.A.'s office has to get more serious about [late discovery] . . . because it is a problem [seen] with some regularity." However, the court believed the way to solve the problem was through the "management level" of the police and prosecutors' offices. The trial court stated it found the proper remedy for the late discovery was a continuance of the trial "for a day or a week or longer if necessary . . . ."

The court found there was no bad faith on the prosecutor's part or any prejudice to Vasquez from the late discovery. The court found the evidence was not exculpatory *Brady*[3] material, but inculpatory evidence. As a result, it denied the motion to exclude. It also declined to give the late-discovery instruction to the jury, finding it would not assist it in any productive way to decide the merits of the case.

---

[3]     *Brady v. Maryland* (1963) 373 U.S. 83, 87.

The court, however, ordered the prosecutor to show defense counsel the portions of the video he intended to play to the jury. The court believed this would ameliorate any disadvantage to defense counsel from the late discovery.

## II.    Governing Law

Section 1054.1 requires the prosecution disclose to the defense "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged" and "[a]ny exculpatory evidence."  (§ 1054.1, subds. (c) & (e).)  Absent good cause, section 1054.1 disclosures must be made at least 30 days before trial or immediately if discovered or obtained within 30 days of trial.  (§ 1054.7.)  Section 1054.7 limits good cause "to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement."  (§ 1054.7.)

A court may make any order necessary to enforce the discovery provisions upon a showing the prosecution failed to comply with section 1054.1 and the moving party had made an informal discovery request.  (§ 1054.5, subd. (b).)  These orders include, but are not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order.  Further, the court may advise the jury of any untimely disclosure or of any failure or refusal to disclose. (§ 1054.5, subd. (b).)  If these sanctions have been exhausted, the trial court may also prohibit the testimony of a witness. (§ 1054.5, subd. (c).)

"[T]he usual remedy for noncompliance with a discovery order is not suppression of evidence, but a continuance."  (*People v. Robbins* (1988) 45 Cal.3d 867, 884, superseded by statute on

7

another ground as stated in *People v. Jennings* (1991) 53 Cal.3d 334, 387, fn. 13.)  It is the defendant's burden to establish that the prosecution's failure to comply with discovery requirements in a timely manner was prejudicial and that a continuance would not have cured the harm.  (*People v. McKinnon* (2011) 52 Cal.4th 610, 688 (*McKinnon*).)

We reverse the trial court's choice of a discovery sanction only if we find an abuse of discretion.  (*People v. Ayala* (2000) 23 Cal.4th 225, 299; *People v. Jackson* (1993) 15 Cal.App.4th 1197, 1203.)

## III.   The Trial Court Did Not Abuse Its Discretion

Vasquez contends the only appropriate remedies for the late disclosure are exclusion of the video or a late-discovery jury instruction.  We disagree.

First, we are persuaded by *McKinnon, supra,* 52 Cal.4th at page 668, there was no abuse of discretion arising from the trial court's decision not to suppress the video.  In *McKinnon,* the prosecutor failed to provide timely discovery.  The defendant did not seek a continuance and made no showing of how his defense would have been different if timely discovery had been provided. The Supreme Court held the trial court did not abuse its discretion by failing to exclude the evidence because the defendant failed to meet his burden of showing that a continuance would not have cured the harm and that the prosecutor's discovery violation was prejudicial.  (*McKinnon, supra,* 52 Cal.4th at p. 668.)

As in *McKinnon,* Vasquez did not request a continuance, despite the trial court's indication that it was the proper remedy for late disclosure.  A continuance of even one day would have provided trial counsel with the time to thoroughly assess the two-

8

hour video.  We are not convinced by Vasquez's argument that such a short continuance would have been "entirely inappropriate" because Vasquez was in custody.  By the time of trial, Vasquez had been in custody more than six months.

Moreover, Vasquez made no showing to the trial court that his defense would have been different had he been provided timely discovery of Officer Geiger's body camera evidence. On appeal, Vasquez argues his trial counsel's ability to present a full defense was hampered by the late disclosure.  According to Vasquez, his trial counsel was unable to assess whether the video contained objectionable content, exculpatory evidence, or impeachment evidence and simultaneously prepare for trial. However, Vasquez fails to identify any actual objectionable, exculpatory, or impeachment footage contained in the video. Given these facts, we follow *McKinnon* and conclude the trial court did not abuse its discretion by failing to exclude the body camera video.

Neither has Vasquez shown the trial court abused its discretion by declining to give the late-discovery instruction. Inexplicably, Vasquez supports his assertion that the late-discovery instruction should have been given by citing to cases not applicable here.  The authorities he relies upon address eyewitness identification and witness credibility in general. (See *People v. Glaude* (1983) 141 Cal.App.3d 633, 642 [eyewitness identification]; *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 883 [general witness credibility].)  Perhaps he relies on misplaced case law because there is a well-established line of authority which indicates that while the trial court has discretion to give an instruction on untimely disclosure of evidence, the court should not give the instruction unless there is evidence of a

9

prejudicial violation of the discovery statute.  (See *People v. Bell* (2004) 118 Cal.App.4th 249, 254–257; *People v. Cabral* (2004) 121 Cal.App.4th 748, 752–753.)  There was no such prejudice here. As discussed above, Vasquez failed to demonstrate how his defense would have been different had he timely received the evidence.  As a result, the delayed discovery instruction was properly denied.

In sum, we find no abuse of discretion.[4]  Here, the trial court ordered the prosecutor to disclose to defense counsel the portions of the video he intended to display to the jury.  We find the trial court properly exercised its discretion to craft an appropriate remedy to ameliorate the effects of the late disclosure.  (*People v. Jenkins* (2000) 22 Cal.4th 900, 952 [courts have broad discretion to craft a remedy for a discovery violation to address any potential prejudice suffered by a party].)

**IV.   Any Error Was Harmless**

Given the facts of this case, any error in failing to exclude the body-worn camera footage or failing to instruct the jury with a late-discovery instruction was harmless under any standard.

---

[4]    Having determined no prejudicial error resulted from the trial court's evidentiary ruling, we need not reach Vasquez's constitutional claims, or his claims of ineffective assistance of counsel.  (*People v. Prince* (2007) 40 Cal.4th 1179, 1243 [" ' "As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [state or federal constitutional] right to present a defense." ' "]; *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"].)

"A violation of section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836." (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.) However, if a discovery violation implicates a defendant's constitutional rights, a reviewing court evaluates whether the error is harmless beyond a reasonable doubt as described in *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 961.)

The evidence that Vasquez committed misdemeanor vandalism was overwhelming. Misdemeanor vandalism is the destruction or damage to property causing less than $400 in damage. (§ 594, subd. (b)(2).) The eyewitnesses uniformly testified to the destruction and damage to property by Vasquez in the board and care facility. Mora observed Vasquez throwing things in the living room, including the television, and damaging the smoke alarm. Coye testified Vasquez was "tearing [] apart" the house when she arrived, including breaking the smoke alarms and putting a hole in the ceiling. Sanchez agreed there were holes in the ceiling that were not there before the incident. Both Coye and Sanchez testified the front window and bathroom window were broken.

Vasquez dismisses the eyewitnesses' testimony, contending it was inconsistent in two ways: (1) Mora testified Vasquez damaged the television but Coye testified there was no damage to the television and (2) Mora and Coye testified the smoke alarms were damaged but Sanchez testified no smoke detectors were damaged. According to Vasquez, the eyewitness testimony was unreliable, and the only reliable evidence of damage was the video footage showing the smoke alarm dangling from the ceiling.

11

As a result, the admission of the video evidence was prejudicial error. We disagree.

First, Vasquez mischaracterizes the witnesses' testimony regarding the damage to the television. The reporter's transcript shows Mora testified Vasquez threw the television to the floor twice, but it did not break. Mora's testimony is entirely consistent with Coye's testimony that there was no damage to the television.

Second, Vasquez ignores Coye's and Sanchez's consistent testimony that the front window and bathroom window were broken. The video shown to the jury does not reveal whether the windows were broken. Indeed, the video did not show the bathroom and only partially showed the front window. Coye's and Sanchez's testimony is sufficient by itself to support a conviction for misdemeanor vandalism.

Third, there are only minor inconsistencies regarding the damage to the ceiling and smoke detectors. Sanchez testified no smoke detectors were damaged, which is contrary to Mora's and Coye's testimony. However, Sanchez testified he noticed holes in the ceiling that had not been there before. This testimony was entirely consistent with Mora's and Coye's testimony that there was damage to the ceiling. We disagree these minor inconsistencies rendered the eyewitness testimony suspect. As discussed above, Mora, Coye, and Sanchez all testified to damage to the home caused by Vasquez. The video evidence served only to support the eyewitness testimony; it was not the sole reliable evidence of damage.

**V.    Vasquez Has Forfeited His Challenge to the Assessments**

Last, Vasquez argues the trial court improperly imposed a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) and a $40 court operations assessment (Gov. Code, § 1465.8, subdivision (a)(1)) after it determined he lacked the ability to pay restitution.  We find Vasquez has forfeited these issues.

During the sentencing hearing, the following colloquy occurred:

> "The Court: . . . Does your client have the present ability to pay fines, fees, and assessments?
> [Defense counsel]:  He does not, your Honor.  He was unemployed at the time, living in a board and care.
> The Court:  Thank you.  Pursuant to *Dueñas*[,[5]] the restitution fine of $100 is stayed.  And I am, though, required to impose the $30 facilities assessment and $20 per count court security fee for a total of $40 as to that fine.  [¶]  People, do you want to have a hearing to be able to prove up that he also has the present ability to pay the restitution fine as well?
> [Prosecutor]:  No, your Honor.  It's submitted as to that.
> The Court:  Thank you.  So the only fines are $30 facilities and total of $40 for the security fee."

Vasquez remained silent and did not object to the assessments when they were imposed by the trial court.  As a result, he forfeited these claims.  (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 [failure to object to trial court fees precluded defendant's *Dueñas* challenge]; see also *People v.*

---

[5]      *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas).*

*Aguilar* (2015) 60 Cal.4th 862, 864; *People v. Avila* (2009) 46 Cal.4th 680, 729.)

## DISPOSITION

The judgment is affirmed.

BIGELOW, P. J.

WE CONCUR:

STRATTON, J.

WILEY, J.