Filed 10/3/23  P. v. Inns CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEREMIAH DANIEL INNS,<br><br>    Defendant and Appellant. | G062711<br><br>(Super. Ct. No. SWF1900740)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Stephen J. Gallon, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Laura Baggett and Juliet Park, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Jeremiah Daniel Inns lived with his girlfriend, Alyssa E., and her daughter, Jane Doe, when Doe was from seven to 10 years old. Months after Inns moved out, Doe disclosed to Alyssa that Inns had been molesting her. A jury found Inns guilty of several sex offenses and the trial court imposed a prison term of 115 years to life.

Inns claims: the police violated due process by failing to arrange for a physical examination of Doe during its investigation; the trial court erred by failing to order a physical exam of Doe during her trial testimony; and the court erred by failing to provide the jury with a transcript (rather than a readback) of Doe's trial testimony.

We find the first claim has been forfeited because Inns did not raise it at any point in the trial court proceedings. As to the remaining claims, we find the court did not abuse its discretion. Thus, we affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

In 2014, Inns moved in with Alyssa and Doe in their home in Lake Elsinore (Riverside County), when Doe was about six or seven years old. Inns worked out of town for weeks at a time. When Inns was home, there were times when Alyssa would leave him alone with Doe, such as when Alyssa was at work. The romantic relationship between Alyssa and Inns ended after about three years. Inns eventually moved out, although they remained friends. Alyssa later moved to Oceanside (San Diego County).

During the three years that Inns lived with Alyssa, Doe later testified "sexual things" occurred between her and Inns on numerous occasions. Inns took off Doe's pants and touched her private area. Inns had Doe watch pornography on his computer. Inns inserted his penis and fingers into Doe's vagina. Doe orally copulated Inns. Doe observed Inns ejaculate into a sock or a washcloth after he withdrew his penis from Doe's vagina. The last sexual incident occurred in Oceanside.

2

In 2018, several months after Inns moved out, Doe told Alyssa that Inns had touched her private areas. Doe said it had been going on for years. Alyssa called the Oceanside Police Department. The case was assigned to an investigator who had worked on child molestation and sexual assault cases for about six years. The Oceanside investigator arranged for a forensic interview of Doe by a trained social worker.

The Oceanside investigator had often arranged for medical examinations of sexual assault victims. However, he did not arrange for a physical examination of Doe after speaking with his supervisors: "So with the majority of sexual abuse cases, any biological or physical evidence is going to be found, possibly found on the victim within 72 hours. And from . . . the last time the abuse occurred to the time of our investigation it was several months that had passed." The Riverside County Sheriff's Department eventually took over the criminal investigation because a majority of the crimes were alleged to have occurred in that jurisdiction.

*Court Proceedings*

In 2020, the Riverside County District Attorney filed an information charging Inns with six counts of sodomy or sexual intercourse, and one count of oral copulation or sexual penetration of a person 10 years of age or younger.

In 2021, Doe testified at a jury trial when she was 15 years old. During Doe's cross-examination, Inns' counsel asked the court to "order a physical examination of this girl. And the reason I am, your Honor, is because she's described and testified about repeated penile/vaginal penetration." Counsel stated, "And if she is not being truthful . . . there is a chance that her hymen is intact." The court denied the motion (the ruling will be covered in more detail in the discussion section of this opinion).

In the defense case, Inns called a nurse practitioner to testify. The witness said if a sexually abused "child was examined immediately, forensics including DNA or

3

acute injuries may be observed. If the child is examined on a delayed account . . . you may or may not have any residual injuries." The witness testified a nonacute exam is "a physical exam where their body is examined for injuries." The Riverside investigator who took over the case after it was transferred from Oceanside testified Doe had never reported any tearing or bleeding, and it was common not to have physical findings in nonacute exams. A psychologist testified Inns exhibited no signs of sexual deviance. Inns called several character witnesses.

The jury found Inns guilty of four counts of sodomy or sexual intercourse, and one count of oral copulation or sexual penetration of a child. The trial court imposed a prison sentence of 115 years to life.

II

DISCUSSION

Inns claims: A) the police violated due process by failing to arrange for a physical examination of Doe during the investigation; B) the trial court erred by failing to order a physical examination of Doe during the trial; and C) the court erred by failing to give the jury a transcript of Doe's testimony, rather than a readback of her testimony.

A. *Physical Examination of Doe During the Police Investigation*

Inns claims the Oceanside investigator violated his right to due process of law by failing to order a physical exam of Doe during his investigation; however, we are not going to address this issue on appeal because it has been forfeited.

Due process requires the prosecution to disclose exculpatory evidence to a criminal defendant. (*Brady v. Maryland* (1963) 373 U.S. 83, 87.) Such evidence must be disclosed "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Ibid*.) A related concept concerns the duty to retain potentially exculpatory evidence. (See *California v. Trombetta* (1984) 467

4

U.S. 479, 488–489, fn. omitted (*Trombetta*); *Arizona v. Youngblood* (1988) 488 U.S. 51, 58 (*Youngblood*).)  However, "due process does not require the police to collect particular items of evidence."  (*People v. Montes* (2014) 58 Cal.4th 809, 837; but see *Miller v. Vasquez* (9th Cir. 1989) 868 F.2d 1116, 1120 ["We hold that a bad faith failure to collect potentially exculpatory evidence would violate the due process clause"].)

In order to raise an alleged error on appeal, the issue must first have been brought to the attention of the trial court.  This fundamental rule of appellate practice is commonly referred to as "'waiver,'" but it is more accurately described as "'forfeiture.'"  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [waiver is the intentional relinquishment of a known right; forfeiture is the loss of right by failing to timely assert it].)  "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."  (*Id.* at p. 1293.)  However, a defendant may, in some cases, raise a pure question of law for the first time on appeal when the facts are undisputed.  (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 195.)

Inns argues on appeal:  "So the Oceanside detective prevented the defense from a medical procedure that was potentially exculpatory.  The decision by the detective was arbitrary and made without consulting any medical professionals — he just ran it by his sergeant.  [¶]  Assuming there was a policy in San Diego County to forego an examination, which was directly contrary to the Riverside protocol, then the San Diego policy would violate a defendant's due process rights.  The failure to conduct an exam that could reasonably lead to exculpatory evidence must be considered bad faith on the part of the police."

Inns did not raise this argument at any point in the superior court by filing a motion to dismiss, or what is commonly referred to as "a *Trombetta/Youngblood* motion."  (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 774.)  Further, this due process issue necessarily involves numerous questions of fact.  For instance, what is the

Oceanside Police Department's policy concerning the physical examination of sex abuse victims, what is the value of a physical examination if it is performed months after an alleged incident, what evidence diminishes at what point in time, etc. Of course, this appellate court is ill-equipped to engage in such fact finding. Thus, we hold that the issue of whether the Oceanside investigator was required under the due process clause to order a physical examination of Doe during his investigation has been forfeited.

Anticipating this well-established rule of forfeiture, Inns alternatively argues he received ineffective assistance of trial counsel (IAC).

A criminal defendant has a constitutional right to effective assistance of counsel. (U.S. Const., 6th Amend.; *Strickland v. Washington* (1984) 466 U.S. 668, 684–685.) To establish IAC, a defendant must show: 1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) this resulted in prejudice. (*Id.* at pp. 687-688, 691-692.)

If the record does not explain why counsel acted, or failed to act, in the manner challenged, a reviewing court must reject an IAC claim on appeal, unless counsel was asked for an explanation and did not provide an explanation, or unless there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 [IAC claims usually involve matters outside of the record and "are often more appropriately litigated in a habeas corpus proceeding"].)

Here, the record does not reveal why counsel for Inns did not file a *Trombetta/Youngblood* motion, or a similar motion, in the superior court. Although we suspect counsel had good reasons for not doing so (assuming such a motion was ever contemplated), we are not going to engage in speculation. Thus, we reject the IAC claim on direct appeal. (See *People v. Mendoza Tello*, *supra*, 15 Cal.4th at pp. 266–267.)

*B. Physical Examination of Doe During the Jury Trial*

Inns argues the trial court erred by failing to order a physical examination of Doe after he made an oral request for that during the trial.  We disagree.

In this part of the discussion, we shall:  1) review relevant legal principles; 2) summarize the trial court proceedings; and 3) analyze the facts as applied to the law.

*1.  Relevant Legal Principles*

"'It is axiomatic that a trial is a search for the truth.'"  (*People v. Cabral* (2004) 121 Cal.App.4th 748, 752.)  "The rationale of the discovery statute is to prevent 'trial by ambush.'"  (*Ibid*.)  "The defendant generally is entitled to discovery of information that will assist in his defense or be useful for impeachment or cross-examination of adverse witnesses."  (*People v. Jenkins* (2000) 22 Cal.4th 900, 953.)  "A motion for discovery must describe the information sought with some specificity and provide a plausible justification for disclosure.  [Citation.]  The court's ruling on a discovery motion is subject to review for abuse of discretion."  (*Ibid*.)

"No order requiring discovery shall be made . . . except as provided in this chapter.  This chapter shall be the only means by which the defendant may compel the disclosure or production of information . . . ."  (Pen. Code, § 1054.5, subd. (a).)[1]  "Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request . . . for the desired materials and information.  If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order."  (§ 1054.5, subd. (b).)

Child victims of alleged sex crimes are afforded certain considerations in criminal courts:  "In any arrest or prosecution under this section . . . the court shall consider the needs of the child victim . . . and shall do whatever is necessary . . . and

_____

[1] Further undesignated statutory references are to the Penal Code.

constitutionally permissible to prevent psychological harm to the child victim . . . resulting from participation in the court process."  (§ 288, subd. (d).)

"The exercise of discretion to refuse to compel a child victim to submit to a physical examination when the examination could at best produce results equivocal on a defendant's 'innocence' should not be disturbed unless the exercise of discretion has been so arbitrary and capricious that no reasonable court could have made such a finding." (*People v. Nokes* (1986) 183 Cal.App.3d 468, 481 [magistrate did not abuse his discretion in denying motion to conduct physical examinations of alleged sex abuse victims].)

### 2. Trial Court Proceedings

During the cross-examination of Doe, counsel for Inns asked her, "Have you had sexual relations with anyone since Jeremiah Inns?"  The prosecution objected before Doe answered.  The trial court sustained the objection.[2]

During a break in Doe's cross-examination, counsel for Inns asked "the court to order a physical examination of this girl.  And the reason . . . your Honor, is because she's described and testified about repeated penile/vaginal penetration.  And . . . my position is . . . [Inns] is innocent . . . .  And if she is not being truthful, Judge, and she has not since had any kind of sex, I mean, there is a chance, maybe likelihood -- I'm not a forensic guy -- but there is a chance that her hymen is intact."

The trial court confirmed counsel had represented Inns "for quite a while" and asked, "why, if you are requesting a medical procedure to be done, why are we just now talking about that after we are in the middle of trial?"  Counsel responded, "Because if I had done it prior to this it would be a motion on paper that has clear law against it. Now that the evidence is on the record the way it is, I mean, it's screaming for justice to

---

[2] "A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevance of evidence of the sexual conduct of the complaining witness . . . ."  (Evid. Code, § 782, subd. (a)(1).)

have a court consider fairly doing an evaluation."

The trial court asked counsel: "Have the facts changed since she's taken the stand from what you anticipated she was going to say based upon her forensic interview, police reports? What's changed that would have rendered it untimely at that point? What's changed now? Has she said something differently than was anticipated in the statements?" Counsel responded, "I'm telling you, if I were to -- I didn't even write a motion because there is no credibility to the motion. I think there is credibility to the request at this point in time."

The trial court said, "I've seen this issue come up time and time again with sexual assault cases where, you know, people of all ages where the hymen was or was not intact, and there is always going to be adverse expert opinion on that as well." The court denied the request: "The request for the forensic exam, number one, is just untimely at this point. But I do not believe it is supported by any type of case law or anything that would order such an invasive procedure at this point so many years after the alleged incident." Counsel concluded cross-examining Doe.

### 3. Analysis and Application

"'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328–1329.) A defendant's request for a medical examination of an alleged sexual assault victim is a request for a discovery order. (See § 1054.5, subd. (a) ["the defendant may compel the disclosure or production of information"].) There are very clear rules in the Penal Code about the timing of criminal discovery requests and discovery orders. (See § 1054 et seq.)

We agree with the trial court that a midtrial request for a medical

9

examination of an alleged child victim of sexual abuse is untimely, barring unforeseen testimony by the victim during the trial. Inns' counsel made no such allegation during his colloquy with the court. Neither did Inns make an offer of proof as to the efficacy of such a physical examination, which would have necessitated a delay in the trial, and which would have taken place many years after the abuse was alleged to have occurred. Thus, we find no abuse of discretion.

Inns argues the trial court did not balance five factors to determine whether a physical examination was required: 1) the reliability of the method used; 2) the seriousness of the underlying offense; 3) the strength of the suspicions that evidence of a crime will be revealed; 4) the importance of the evidence sought, and 5) the possibility that the evidence may be obtained by alternative less intrusive means. (See *People v. Scott* (1978) 21 Cal.3d 284, 293.)

Although the trial court did not rely on this test, the court was familiar with the issue and questioned the validity of "such an invasive procedure at this point so many years after the alleged incident." That is, despite the untimeliness of Inns' request, and the absence of any offer of proof, or any citations to legal authorities, the court appeared to make a reasoned decision based on the facts and the law made known to the court at the time of its ruling.[3] Again, we find no abuse of the court's discretion.

### C. Request for Testimony During Jury Deliberations

Inns argues the trial court erred by failing to give the jury a transcript of Doe's trial testimony, rather than a readback of her testimony. We disagree.

In this part of the discussion, we shall: 1) review relevant legal principles; 2) summarize the trial court proceedings; and 3) analyze the facts as applied to the law.

---

[3] Inns makes some factual arguments on appeal based on testimony during the defense case that occurred *after* the trial court's ruling.

## 1. Relevant Legal Principles

"After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (§ 1138.)

Section 1138 requires a trial court to satisfy requests by the jury for the review of testimony, even without a showing of a disagreement. (*People v. Box* (2000) 23 Cal.4th 1153, 1215 (*Box*).) In *Box*, a defendant was on trial for multiple murders. (*Id*. at p. 1171.) During its deliberations, the jury sent a note requesting the testimony of two witnesses. (*Id*. at p. 1213.) Both the prosecution and the defendants asked for a readback of the testimony, rather than written transcripts. The court denied the parties' requests and gave the jury redacted transcripts. On appeal, defendant claimed constitutional and statutory errors. (*Ibid*.) The Supreme Court disagreed, finding no constitutional violations. (*Id*. at pp. 1213–1214.) The Court further found: "We also reject defendant's claim the trial court violated a statutory right under section 1138. Section 1138 requires the testimony to be furnished; the form in which it is furnished, i.e., written or oral, is apparently in the trial court's discretion." (*Id*. at p.1214.)

Under section 1138, if a jury requests transcripts during deliberations, a trial court is required to inform the jury that it has the right to a readback of witness testimony. (*People v. Triplett* (2020) 48 Cal.App.5th 655, 676 (*Triplett*).) In *Triplett*, a defendant was on trial for assault with a deadly weapon, carjacking, and attempted murder. (*Ibid*.) During deliberations, the jury requested "transcripts" of two witnesses, which the court denied without informing the jury it could have a readback of the testimony. (*Id*. at pp. 659–660.) The Court of Appeal found error, explaining the trial

11

court "erred in construing the jury's request narrowly as a request for transcripts—not a request for a readback of testimony—and in failing to inform or remind the jury of their right to a readback of testimony." (*Id*. at p. 662.)

### 2. *Trial Court Proceedings*

On a late Wednesday afternoon, the jury began its deliberations. About an hour later, the jury sent a note to the court requesting the video of Doe's forensic interview and the transcript of that interview. The jury also requested a transcript of Doe's trial testimony.

The following morning, the trial court conferred with counsel regarding the jury's requests. As far as the forensic interview and the transcript of that interview, the court said, "that's already in evidence and they will have that." As far as the transcript of Doe's testimony, the court said: "My intent would be to provide the entirety of Jane Doe's testimony, that's direct and cross-examination, to the jury for read-back. It's my understanding that that was already anticipated that that would be requested in this type of trial. It's already prepared. Our court reporter is ready to go in momentarily with that testimony. [¶] Anybody wish to be heard on that?"

Inns' counsel asked, "Your Honor, is the court reporter intending to read it back to them or just give the transcript to the jury?" The court said there would be a readback: "It would be read to them under the usual circumstances. No interaction with the court reporter, anything like that. No deliberations or discussions during that." Inns' counsel said he had already arranged with the court reporter to prepare a transcript. Counsel requested "the Court to give them a copy of the transcript that's already been prepared." The prosecutor stated, "I think read-back is the typical procedure."

The trial court responded: "It's the procedure that I've done in the hundreds of jury trials that I've been involved in, and I don't intend to deviate from that.

12

[¶] I'm going to go ahead and have the court reporter read back the testimony consistent with every single trial that we've done in this courtroom and other courtrooms in the county -- all of them, actually. [¶] I'm going to go ahead and do that."

Late in the afternoon on Friday, the trial court received two more notes from the still deliberating jury: "We need to have the transcript of Jane Doe & Alyssa's testimony." "We would like to have the transcripts of Alyssa's testimony. First thing Monday morning."

On Monday morning, Inns filed a brief asking the court to provide written transcripts to the jury. The court heard argument from the parties. The prosecutor said, "I did have a chance to read [the] defense brief. I understand he cited a few cases that basically says it's not error to provide the transcript. But, I mean, it does say it is in the trial court's discretion when the testimony is to be furnished. So I'd submit."

The trial court ruled: "The court is going to exercise its discretion as indicated in the brief provided by counsel, and court will not be providing the transcript. The court will be providing readback of the chosen testimony to the jury." Inns' counsel asked, "can the court just articulate why you don't want to give the transcript to the jury?" The court responded, "The court has made its ruling, and the court has indicated it has exercised its discretion and judicial economy, and there is readback provided." Later that morning, the readback was provided to the jury. That afternoon, the jury indicated it had reached a verdict.

### 3. Analysis and Application

A superior court judge is given wide discretion in conducting a criminal trial: "It shall be the duty of the judge to control all proceedings during the trial . . . ." (§ 1044.) "In exercising its discretion under section 1044, a trial court must be impartial and must assure that a defendant is afforded a fair trial." (*People v. Cline* (1998) 60

13

Cal.App.4th 1327, 1334.) "When there is no patent abuse of discretion, a trial court's determinations under section 1044 must be upheld on appeal." (*Ibid.*)

It is apparent from the statutes and case law that a jury is entitled to *a review* of trial testimony upon request. (See §§ 1044, 1138; *Box*, *supra*, 23 Cal.4th at pp. 1213–1214; *Triplett*, *supra*, 48 Cal.App.5th at pp. 661–662.) It is also apparent that it is within the discretion of the trial court to choose the procedure (or form) by which to provide that review of testimony to the jury (either through a readback by the court reporter, or through a written copy of the transcript, or perhaps through a video if available in some circumstances). Thus, we find no abuse of discretion.

Inns argues: "The court's denial for judicial economy and 'that's not the way we do things around here' was arbitrary and legally erroneous." We disagree. Although we are uncertain what the trial court meant by its reference to "judicial economy," the court plainly fulfilled its legal obligation to provide the jury with a review of witness testimony through the readback procedure. (See § 1138.) Indeed, it is interesting to note that in the Supreme Court's *Box* case, both the prosecution and the defense asked for a readback of witness testimony, rather than the transcripts.

To reiterate and conclude, although a different judge may have granted Inns' request to provide transcripts, rather than a readback of trial testimony, we cannot say that the trial court abused its discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

14

III

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.